## SHAW v. BALL ET AL.

1 **Fraud:** UNDUE INFLUENCE: EVIDENCE CONSIDERED. Evidence considered and held insufficient to show fraud and undue influence in the transfer of property, by a man advanced in years and in feeble health, to certain of his children, upon an agreement by them to pay him an annuity during his life, no rights of creditors being prejudiced by such transfer.

*Appeal from Cedar District Court.*

THURSDAY, DECEMBER 9.

THE plaintiff, as administrator of the estate of Joseph Ball, deceased, brings this action for the recovery of certain personal property which, it is alleged, belongs to said estate. The petition alleges in substance that Joseph Ball departed this life on the 7th day of March, 1876, leaving no widow, and leaving as his only heirs the defendants B. F. Ball, James Ball, John Ball, and the heirs of Jane Lamborn, deceased, who are Isaac B. and Mabel Lamborn; that Joseph Ball at the time of his death was the owner of stock in the People's Bank of West Liberty, of the value of six thousand two hundred and fifty dollars, stock in the West Branch Bank, Cedar county, worth twelve hundred and fifty dollars, notes worth seventeen hundred and twenty-seven and thirty-five one hundredths dollars, and personal property, including household goods, of the value of fifty dollars.

That for a long time prior to the death of Joseph Ball he

was subject to paralysis, and was otherwise, on account of age and mental and physical disability arising therefrom and from sickness, incompetent to transact business.

That about the first of February, 1876, the defendants, B. F., James and John Ball, for the purpose of preventing the heirs of Jane Lamborn, deceased, from getting their just proportion of said estate, and of making said estate insolvent, so that no claims could be collected against it, in fraud of the rights of the heirs of Jane Lamborn, and of the just claims of creditors, wrongfully took possession of all of said personal property, and now hold the same.

That B. F. Ball, without authority, pretended to assign said bank stock to himself and the other defendants, and procured it to be transferred on the books of said banks.    That there are claims against the estate for taxes; that Lydia Lamborn has filed a claim against the estate for $1,280, and the administrator of the estate of Elizabeth Ball, deceased, has filed a claim of ———— dollars; that after using due diligence, plaintiff is unable to find any property belonging to the estate except that above referred to.

The answer of the defendants admits that Joseph Ball, in the month of January, 1876, owned the notes referred to in the petition, and fifty shares of bank stock in the West Liberty Bank, and ten shares of bank stock in the West Branch Bank, but denies that the notes are of the value alleged in the petition.    The answer further alleges that some time about the 18th day of January, 1876, the said Joseph Ball, being desirous of arranging his worldly affairs, of so disposing of his property as that after his death litigation might be avoided amongst his heirs, and to provide his support during the remainder of his life, entered into a verbal agreement with the defendants to transfer and deliver to them the notes and bank stock above referred to, in consideration whereof the defendants in writing obligated themselves to pay to said Joseph Ball, on the first day of January, 1877, and on the 1st day of January of each year thereafter, so long as he

should live, if by him required, the sum of $600; that pursuant to this agreement the said Joseph Ball delivered to these defendants the notes, and B. F. Ball, by the express direction of Joseph Ball, by virtue of a power of attorney executed by the latter transferred the bank stock; that said transfers were made in good faith, for a good and valuable consideration, for the purpose of settling said Joseph's estate and of providing himself with a support. The defendants offered to give bonds with approved sureties for the payment of all claims that may be legally established against the estate.

The reply denies the allegations of the answer, and avers that if any such transfers of property were made, as alleged, they were made through the procurement of the defendants, and by misrepresentations and fraud by them made and practiced upon the said Joseph Ball, at a time when he was incompetent to make a contract or a disposition of his property, and that such transfer is illegal and void.

The court dismissed the petition. The plaintiff appeals.

*Wolf & Landt, Holmes & Brook* and *Cook & Richman,* for appellant.

*Piatt & Carr* and *Fairall & Fairall,* for appellees.

DAY, J.—No claim has been established against the estate of Joseph Ball, except one in favor of the administrator of
1. FRAUD: Elizabeth Ball, and that, as shown by the amended
undue influ-
ence: evi- abstract, has been paid in full. It is evident that
dence consid-
ered. suit is being prosecuted by the administrator in the interest of the heirs of Jane Lamborn, deceased, in order that distribution may be made to them of a share of the estate. The evidence is so voluminous that it is not practicable satisfactorily to review it within the space that we deem proper to devote to an opinion. It appears that Joseph Ball pursued the policy of dividing his property amongst his children during his lifetime. On the 4th of March, 1873, he deeded to B. F.

Ball one hundred and sixty acres of land for the expressed consideration of $160. On the 30th day of December, 1874, he had a stroke of partial parlaysis. A physician was called, who attended him until January 10, 1875, when the acute symptoms were removed, and a dizziness remained which had been of many years standing. He so far recovered as to be competent to transact ordinary business, although enfeebled in body, and his memory, probably, somewhat weakened.

On the 25th day of February, 1875, he made a division of nearly all his real estate among his children then living, in which division Jane B. Lamborn received seventy acres of land, valued in the deed at $1,600. No question has been made as to his mental capacity to perform this act. It does not appear that he had any other stroke of paralysis, although he had another attack of sickness about June, 1875. In October, 1875, his daughter, Jane Lamborn, died. Although on good terms with this daughter, he seems always to have disliked her husband, George J. Lamborn, and it seems from the evidence that a bad feeling existed upon the part of Lamborn toward his father-in-law and his brothers-in-law. On the 1st day of December, 1875, Joseph Ball executed his will, in which he bequeathed to the heirs of his deceased daughter, Jane Lamborn, all notes and accounts which he held against her. He devised to his children, John, James and Benjamin F., all the residue of his property, both real and personal, to be divided equally between them. Afterward he seems to have conceived the idea of dividing his property amongst these three children during his lifetime, and of exacting from them an agreement to pay him $600 on the first day of January of each year thereafter, if required by him, during his life. The division was made on the 18th day of January, 1876. At this time he deeded to his sons the small remnant of his real estate, and they executed an agreement as follows:

"We, the undersigned, will give father six hundred dollars on first month, first, 1877; same amount to him and him only

following first month, first, as long as he lives, if by him required.             "John Ball,

January, 1876.                   "James Ball,

                                     "B. F. Ball."

B. F. Ball, acting under a power of attorney executed by Joseph Ball, August 20, 1875, transferred the bank stock pursuant to the division, and Joseph Ball subsequently approved the transfer and expressed himself satisfied therewith. We are fully satisfied that at the time of this transaction Joseph Ball was possessed of sufficient mental capacity to comprehend his relations to his property and to his children, and understandingly to dispose of his property, and we cannot find from the testimony that any influence was employed by the defendants to induce him to make such disposition. The defendants were his only surviving children. His daughter left two children. He stated upon various occasions that they had received more than his other grandchildren would receive if the remainder of his property were equally divided between them; enough if taken care of, and if not taken care of enough to squander. It is claimed that the consideration is grossly inadequate, and that, therefore, the disposition should be set aside. But there was here the good consideration of natural love and affection, as well as the valuable consideration of the agreement for support. No fraud or imposition being shown, the good consideration was, of itself, sufficient. The case is the not unusual one of an aged man, in feeble health, and expecting at the most but a short time to live, giving his property to his children, and exacting from them an agreement for support. Joseph Ball died within less than two months after this arrangement was made, at the advanced age of seventy-three. So far as the evidence shows no rights of creditors are involved. The disposition of the property was in accord with his purposes as expressed on various occasions; in view of all the circumstances of the case it is not so unreasonable as to raise any presumption of

imbecility; we are satisfied from all the evidence that he possessed sufficient mental capacity to make a valid disposition of his property, and we are not authorized to conclude from the evidence that any undue influence was used, or improper means were employed. We unite in the conclusion that the decree should be

AFFIRMED.