*MILLAUDON vs. ALLARD—BANK OF GEORGIA INTERVENING.*

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The third possessor of property subject to several mortgagees and who has purchased from his vender a right to the first mortgage, when the property is sold by the sheriff on the application of subsequent mortgages, is entitled to be first paid out of the proceeds, although he becomes the purchaser himself.

A mortgage in favor of an absent person, executed and registered by the

2 547
112 349
e112 355

2 547
f123 796

MILLAUDON
*vs.*
ALLARD.

mortgager, although not accepted by the mortgagee, takes precedence of a posterior mortgage duly accepted and registered.

The facts are stated in the opinion of the court by

*Martin, J.*

This was a case of a writ of seizure and sale by the mortgagee. The premises were sold. The Planters Bank of Georgia intervened, being a posterior mortgagee.

The district court was of opinion that as the defendant, the third possessor, had had the mortgaged premises adjudicated to himself, there was no sale, as they were his before the adjudication, and he could not purchase his own thing. The proceedings in the case presented no obstacle to the exercise of the intervening parties right as a mortgagee, and he directed a writ of seizure and sale to issue in his favor.

From this judgment the defendant appealed.

The record presents the following case:

1. On the 25th of June, 1822, Lewis N. Allard, the defendant's father, sold to Richardson one undivided half of a tract of land and forty-eight slaves, on which he retained a mortgage for $30,000, part of the price, afterwards credited by a partial payment of $25,000.

2. Two days after, June 27th, 1822, Richardson gave a mortgage to Landreaux, on the premises for $16,000 and interest.

3. On the 17th of March, 1823, Richardson mortgaged the undivided tract of land and slaves to Pierre Allard, to whom he also mortgaged twenty-three other slaves, for a debt of $8000 and interest. The mortgagee, who was then absent, accepted the mortgages on the 16th March, 1823.

These two last mortgages were assigned to the plaintiff Millaudon, and form the ground of the present suit.

4. On the 12th April, 1823, the undivided land and negroes being encumbered by the above three mortgages, and the 23 slaves by the last; Richardson sold the whole to Procter, who covenanted to discharge all the above mortgages, and gave his note to Richardson for twenty-five thousand

dollars, mortgaging the above property for the security of the payment of the note.

This note was transferred to J. & C. Bolton, and by them to the Planter's Bank, the intervening party, and is the basis of the intervention.

On the 31st of March, 1824, Proctor reconveyed to Richardson the whole property purchased from him—the latter reassuming the payment of the mortgages to Louis N. Allard, Laudreaux and Peter Allard or Millaudon, and of Procter's note for twenty-five thousand dollars, the property of the Bank—and he mortgaged the whole property to Procter for the security of the performance of his covenant.

5. On the same day Richardson conveyed all the premises to Louis N. Allard, receiving in payment six thousand dollars in cash, in discharge of twenty-five thousand dollars, the amount of the first mortgage, and his vendee assumed the payment of those to Landreaux and P. "Allard or Millaudon. Richardson undertaking to discharge the note of Proctor in the possession of the Bank.

6. Lastly, on the 29th of October, 1824, Louis N. Allard sold to his son, the present defendant, the whole property above mentioned, for $120,000. Forty thousand was paid in cash, and the balance was promised to be paid in ten yearly instalments: but the vendee reserved to himself the right of applying the amount of the deferred payments to the total or partial discharge of the mortgages of Landreaux and Pierre Allard or Millaudon. No mention was made of Proctor's note, nor of the mortgage for the security of its payment.

Matters were in this situation when the plaintiff, assignee of P. Allard, obtained a writ of seizure and sale, on which the premises were sold: the undivided tract and slaves for $40,000—the twenty-three slaves for $11,350—in all, $51,350. The sheriff deducted from this sum, $220 for costs, and paid the plaintiff's claim $16,783, and paid the balance, $34,347, to the defendant.—*Code of Practice* 704.

Eastern District,
July 1831.

MILLAUDON
vs.
ALLARD.

This sum being insufficient to discharge the two first mort- gages, (Louis N. Allard and Landreaux) the sheriff, the pro- ceeds of the sale being exhausted, gave the defendant a re- lease of posterior mortgages—*Code of Practice* 708—after having received his bond for indemnity and the security of the rights of other parties.

Four months after, viz. on the 18th of February, 1830, the bank intervened, by procuring a rule on the defendant to shew cause why he should not pay the sum due on Proc- tor's note, out of the proceeds of the sale on Millaudon's or- der of seizure and sale.

The claim of the bank was resisted on the ground that the defendant was subrogated to his father's right on the first mortgage for $25,000, and to Landreaux's right on the se- cond for $16,000, the capital, of these two sums ($41,000) exceeded the balance received from the sheriff.

We think the district judge erred in concluding that the defendant acquired no right by the sale; that the thing was his own before the sale, would have continued so without the sale, and is no more than his own after it.

The third posses- sor of property sub- ject to several mort gagees and who has purchased from his vender a right to the first mort- gage, when the property is sold by the sheriff on the application of sub- sequent mortgages is entitled to be first paid out of the proceeds, although he becomes the purchaser himself.

The sheriff sold the rights of Richardson, the mortgagor, as they existed at the date of the mortgage, and by the pur- chase the defendant acquired what he did not possess be- fore, the release of the mortgagee's claim; so that there was an actual sale, the property was transferred to the purcha- ser, and the subsequent mortgagee can only exercise his rights on the balance remaining after the discharge of this preceding mortgage. To ascertain what these rights are, remains to be done.

This we are enabled to do by an agreement, which the parties have placed on record, that the proceeds of the sale are in court, subject to distribution; the said proceeds being represented by the defendant's bond to the sheriff, which that officer has returned into court.

This leads us to the consideration of the defendant's right to retain, first, $25,000, the amount of the first mortgage,

Eastern District,
July 1831.

DE GRUY'S SYN-
DIC
vs.
HENNEN

with interest; secondly, $16,000, that of the second, with interest. As the principal absorbs the whole balance, the interest will not be taken into view.

I. As to the first, on Louis N. Allaud's mortgage, it is objected by the appellee's counsel, that the debt of which the mortgage was an accessary, has been extinguished by payment is no longer due, and,*ergo*, the accessary has ceased to exist.

But the appellant's counsel urges that the mortgagee creditor, who purchases the premises is as if subrogated to himself, and preserves his mortgage in regard of a posterior mortgage, and the confusion which results from the purchase suspends, indeed, his mortgage, but does not absolutely destroy it:—he cannot have a mortgage on his own estate.

This principal appears to us to be correctly established by *Merlin*, 13, *Repertoire verbo subrogation de personns.* Sec. 4. He says the effect cannot have a longer duration than the cause. If the latter be temporary only the former cannot be perpetual. He cites *President Favre liv.* 8. *tit.* 15, *Die.* 8. Creditorem qui rem sibi obligatam emit a debitori aut in solutum accepit, jus idem pignoris quod in ea habent remississe et amississe, certum est quasi confusionis cujus- dam postestate. Sed si rem postea evinci contingat jus suum posteriori restitueter ac si quam sublata pignoris obligatio fuisset.

Had the defendant before he purchased the premises, enjoyed a servitude or incorporeal right on the premises, they would have been extinguished by confusion; for one cannot be the creditor and debtor of a servitude; have a right of way on an estate of which he has the fee simple; but on his relinquishment to an anterior mortgage or on a sale at the latter's instance, the servitude or incorporeal right would be revived.—*Civil Code* 462, *art.* 50.

The purchase of the land cannot have the effect of destroying the claim of the creditor, unless the title passes to him

Eastern District,
July 1831.

DE GRUY'S SYN-
DIC
vs.
HENNEN

We therefore conclude that Lewis N. Allard by purchasing the premises, did not destroy his mortgage so as to let in posterior ones.

2. As to the mortgage of Landreaux it is not pretended to be discharged.

But the appellee's counsel has urged, that the mortgage of Pierre Allard has not a priority over that of the bank—because, although it was executed and recorded before the bank obtained its, the latter must be preferred, because the former did not become effectual till its acceptance by the mortgagee, which was posterior to the date of the mortgage of the bank and its registry.

A mortgage in favor of an absent person, executed and registered by the mortgager, although not accepted by the mortgagee, takes precedence of a posterior mortgage duly accepted and registered.

We think an absent person has the benefit of an engagement contracted towards him. Pareciendo que alguno se quizo obligar a otro por promision o por algun contrato, o en otra manera, sea tenido de cumplir aquello que se obligo, y no puede poner exception que no fué hecha stipulacion, que quiere decir prome, temiento, con cierta solemnidad de derecho, o que fué hecho el contrato o obligacion entre ausentes o que non fué hecho ante escribano publico, o fué hecha a otra persona privada, en nombre de otros, entre ausentes, o que se obligo alguno que daria a otro o haria alguna cosa, mandamos que todavia vale la obligacion y contrato que fuere hecho, en qualquiera manera que parezca que uno se quizo obligar a otro.—*Recopilacion de Castilla* 5, 6. 2.

See *Duchamp et al. vs. Nicholson*, 2d *Martin, N. S.* 672; *Marigny vs. Remy*, 3 id. 607.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the rule obtained by the appellee's be discharged with costs in both courts.