SUCCESSION OF JOSEPH CLAUDE MARY—ANTOINE CAVELIER and another, Executors, Appellants.

A bequest of a sum of money "to the orphans of the First Municipality of New Orleans," may be claimed and recovered by the City Council of that Municipality, who are authorized to regulate its distribution among the objects of the testator's bounty. C. C. 1536.

In regard to the creditors of a succession, the administration of the assets and the payment of the debts of the deceased must be governed exclusively by the law of the country where the administrator or executor acts, and from which he derives his authority to collect the assets. No provision of the will could subject them to the necessity of seeking payment elsewhere. Otherwise, as to legatees, who have no claims against the succession but such as the testator pleased to give them, who might make his bounty conditional. They must take their legacies, if at all, *cum onere.*

APPEAL from the Court of Probates of New Orleans, *Bermudez,* J.

MORPHY, J. Joseph Claude Mary, formerly a resident of this city, died at Vichy, in the kingdom of France, leaving a will, the proper interpretation of which gives rise to the present controversy. Among divers legacies which he makes to persons residing in this country and in France, is one of $5000 to the orphans of the First Municipality—*aux orphelins de la Première Municipalité.* After these bequests, the will contains the following clauses, to wit:

" Je nomme pour mes exécuteurs testamentaires pour tous les biens que je possède aux Etats Unis, Messieurs Antoine et Zénon Cavelier, frères, demeurant à la Nouvelle Orleans, qui voudront bien accepter ma confiance, et que je charge de vendre à l'encan mes biens situés aux Etats Unis, moins la maison que j'ai léguée à Monsieur Laurans.

" Je nomme, pour les biens que je possède en France, mon exécuteur testamentaire Monsieur Laurans, mon légataire, auquel Messieurs Cavelier remettront le prix provenant de la vente de mes biens d' Amérique ; et le dit M. Laurans, en sa qualité d' exécuteur de mes volontés dernières, recevra, outre le prix de la dite vente, le capital en numéraire que j'ai placé chez Monsieur Jules Béchet ainé, mon banquier à Paris, rue Chaussée d' Antin, No. dix-neuf bis, ainsi qu' une somme de quarante mille francs, (huit mille gourdes,) que j'ai en hypothèque sur une maison sise à la Nlle. Orleans, et placée en mon nom par mon dit banquier.

" Enfin je veux et ordonne que, si après l'acquittement de tous mes legs, il reste du disponible, ce disponible soit réparti entre tous mes légataires proportionnellement à la valeur de chacun son legs, leur léguant à cet effet ce reliquat."

In pursuance of these provisions of the will, Antoine and Zenon Cavelier proceeded to sell all the property the sale of which was 'ordered by the testator, and filed in the Court of Probates an account of their administration, showing the money and notes on hand. This account sets forth the legacies made to persons residing here, and expresses the intention of the executors to have the notes discounted under the authorization of the court, and to deliver over to Pierre Laurans the balance remaining, after the payment of the debts. To this account various oppositions were made. Our attention has been called only to the two which were sustained by the judgment appealed from. *First,* That of the New Orleans Catholic Association for the relief of Male Orphans, the object of which is to have it decreed that this corporation was the particular legatee intended by the testator, when he bequeathed $5000 to the orphans of the First Municipality. *Secondly,* That of the legatees residing here, who contend that their legacies are to be paid in this city, and that they cannot be subjected to the trouble and expense of seeking their payment

in a foreign land, when there are means in this country to satisfy them.

In relation to the first opposition, the judge below has declared himself satisfied, from the evidence adduced, that the intention of the testator was that the New Orleans Catholic Association for the relief of Male Orphans should reap the benefit of the bequest of $5000, made by him in favor of the orphans of the First Municipality of New Orleans. Such an intention does not surely result from the terms of the will. The bequest is in favor of the orphans of the First Municipality, without any restriction as to sex or any other circumstance. How then can it be claimed as made to the male orphans, or to any other class of orphans, or to any particular corporation? As to the evidence showing the intentions of the testator, it consists wholly of the testimony of one witness, Gabriel Correjolles, who declares that he and the deceased were old friends, and were in the same company during the war of 1814. That at the time of Mary's last visit to this city, the New Orleans Asylum was at Blanc's house on the Bayou St. John, and continued to be kept at the same place until after his departure for France; that, from conversation with Mary, he thinks that he was a catholic, and that the Asylum was commonly called the Catholic Asylum. That he (the witness) knows of no Orphan Asylum existing at that time, or even now in the First Municipality, except the one alluded to, which has since been removed from it.

In these facts we can see nothing which points exclusively to the opponents, as the persons whom the testator had in view. The existence of this corporation at the time the testator visited New Orleans, and the fact of his being himself a catholic, are, in our opinion, insufficient to control the clear and plain words of the will, that the donation is made *to the orphans of the First Municipality*. It appears to us that the account should not be amended in this respect; and that, under article 1536 of the Civil Code, the City Council of the First Municipality will be competent to claim and receive the legacy, and regulate its distribution among the intended objects of the testator's munificence to be found within the limits of the First Municipality.

On the second question, arguments have been urged which would have had their due weight, if offered by the creditors of the estate. It is well established in regard to them, that the administration of the assets of deceased persons, and the payment of the debts are to be governed altogether by the law of the country where the administrator or executor acts, and from which he derives his authority to collect such assets. No provision of the will could subject them to seek elsewhere their payment. But the case is quite different with respect to legatees, who have no claims against the estate, except such as it has pleased the testator to give them. He, surely, was at liberty to attach conditions to his bounty. The legatees must take it *cum onere*, though they may renounce it, to be sure, if the conditions annexed to it appear to them too burdensome.

As to the intention of the testator that his executors in Louisiana should act as they propose to do, we cannot entertain a doubt. He expressly directs his executors, A. and Z. Cavelier, who had been his agents here, to sell at auction all his property in Louisiana, with the exception of a house and lot; and he directs them to transmit the proceeds of the sale to P. Laurans, whom he appointed the executor of his last will. He further declares that this executor is to receive, not only the price of the property sold here, but also the amount of a claim secured by mortgage on a house situated here; and he concludes by ordering that, if, after the payment of all his legacies, there remain a surplus, it shall be rateably distributed among all his legatees according to their respective legacies. It is clear that the testator intended to limit the functions of his Louisiana executors to the selling of his property here, and the sending of the proceeds to P. Laurans, his executor in France, with a view to concentrate all the assets of his estate in the hands of the latter, for the purpose of a single and general distribution among all his legatees. Having property in unequal proportions in both countries, he probably directed this course to be pursued in order to place all the legatees on a footing of equality. If the assets prove insufficient, they will be paid rateably, and if there be a surplus, it will be apportioned among them in conformity with the will. Such appears to have been the under-

standing of the matter in France, for we see, in the record, that P. Laurans, after having realized the assets of the estate there, made a provisional and rateable distribution of them among the legatees in both countries, and deposited in the *Caisse des Consignations* at Paris, and to the credit of the Louisiana legatees, the dividends accruing to them.   This was no doubt done by Laurans as a partial execution of his trust, and in anticipation of the transmission to him of the assets realized in Louisiana according to the will, on the reception of which a further and final distribution among all the legatees was in contemplation.   The Judge of the Court of Probates has ordered that the opposing legatees shall be paid, here, the whole amount of their legacies, after deducting the sums placed to their credit in France, on their giving him security that they will refund to the succession whatever sum they may have received over and above their legitimate portion.   This decree, we think, is erroneous.   It violates a positive behest of the testator, defeats the equality he intended to establish among his legatees, and may give rise to difficulties, which he wished to avoid when he ordered all the funds of his estate to be paid over to P. Laurans, for the purpose of a general distribution of them under his will.

It is, therefore, ordered that the judgment of the Court of Probates be avoided and reversed, as relates to the oppositions of the New Orleans Catholic Association for the relief of Male Orphans, and of the heïrs of Clara Rufier, which are hereby dismissed with costs ; and that it be affirmed in all other respects.   The costs of this appeal to be borne by the appellees.

*H. R. Denis,* for the appellants.

*Canon* and *Roselius,* contra.