The opinion of the Court was delivered by
Berjiudez, C. J.
The object of controversy in these two cases, which are to be determined together, by consent of parties concerned, involves a distribution of the proceeds of a judicial sale in the hands of a seizing creditor, and the right of the latter to a sheriff *s deed, in furtherance of the adjudication made to them of the property.
From a judgment allowing the proceeds of sale exclusively to the seizing creditors, whose demand for damages was reserved, and directing the Sheriff to make and deliver to them a deed to the *1034 property, this appeal is taken. The appellees pray that the judgment be amended by allowing the damages asked.
The record discloses the following facts :
On the 5th of March, 1870, Mrs. Charles Delhommesold the Magenta Plantation to W. II. Seward, Jr., for $31,000, part cash, part on time, for notes maturing in 1870, 1871, 1872 and 1873.
In 1875, executory process having issued on a note maturing in 1873, an injunction was obtained to arrest the sale of the property. The case was removed to the Federal Court, whose judgment in favor of the seizing creditors was affirmed by the U. S. Supi'eme Court in 1881. On the return of the mandate of that Court, the seizure and sale proceedings took their course; the property was offered for sale, and adjudicated to the seizing creditors for less than their claim. J. S. Copes having filed a third opposition, claiming to hold a note secured concurrently with the plaintiffs, by vendor’s privilege and special mortgage, and other claims secured by privilege, obtained an order directing the Sheriff to retain the proceeds of sale, and prayed to bp paid pari passu with the seizing creditors, out of the amount of sale retained by them. The adjudicatees haying failed to pay to the Sheriff the amount of their bid, that officer proceeded to readvertise the property, but was enjoined from offering it for sale by the purchasers, who ask that they be declared the owners thereof, and that the Sheriff be commanded to make and deliver a deed to them as such, and be condemned to pay them certain damages.
The seizing creditors resist the third opposition of Copes on several grounds. They deny that he ever acquired the note with concurrent security, privilege and mortgage, and charge that the note passed to him with the express understanding that the privilege and mortgage, by which it was originally secured, would rank next. They aver further, that if it ever was transferred with the security claimed, the debt which it once evidenced, together with the asserted privilege and mortgage, has been extinguished by prescription, by novation and by confusion. They allege tortious acts against Copes, and claim damages from him.
Of these defenses, we propose to examine, presently, the latter only, and will consider the claim for damages further on.
On the trial of the differences of the litigants, it was established that, during the pendency of the injunction suit before the Federal Courts, the property changed hands.
In May, 1877, Geo. F. Seward, who had previously acquired it from W. II. Seward, Jr., sold it to Charles Starr, who, in March, 1879, in turn sold it to J. S. Copes, the third opponent. The first sale was for $10,000. The second was' for $15,387.57, out of which the purchaser *1035 retained $8,300, “ to pay, whenever exigible, the Delhomme mortgage claim to whomsoever may lawfully demand the said sum, as the said claim is now in litigation and undecided in the U. S. District Court in New Orleans;” and, for the remainder of the price, the sum of $7,087, the purchaser furnished three promissory notes, which were to be delivered to Dr. Copes, in payment of his mortgage claim, in accordance with special instructions contained in a power of attorney. The third sale by Starr to Copes was for $8,220, the amount then due to the seizing creditors, A. Declouet and Mrs. Delhomme.
The act of sale to Copes refers to the vendor’s title, and contains an express stipulation that Copes did not assume, and would not bo liable for, any mortgage claim whatever on the property (beyond that sum).
It is insisted that, from the very instant that Copes acquired the real estate on which he claims to have a privilege and mortgage to secure the purchase note which he held, the security on which he rests his actual pretension to a concurrent participation in the proceeds of the judicial sale was completely extinguished. Indeed, the Code expressly provides for such extinction by the creditor acquiring the ownership of the property encumbered; R. C. C. 3277, 3411 ; and the jurisprudence is well settled, that the qualities of mortgagee and owner of the thing mortgaged cannot be united in the same person at the same time. 15 An. 407; 25 An. 559; V. Pothier Hyp. 177; Troplong Hyp. 4, 861; Dalloz Hyp., Ch. 2, Sec. 9, N. 35; C. N. 2180.
But the third opponent contends that, as the purchase which he made is violative of a prohibitory law, Act 3 of 1878, which forbids the sale of property pending proceedings to enforce a mortgage upon it, it is an absolute nullity which has produced no effect. He insists, further, that oven if the property has passed to him, his mortgage was only suspended, and was not destroyed; that it has revived the moment that the cause of the confusion was removed by a forced sale of the property to pay concurrent notes, and because of such revival, he must be allowed to participate in the proceeds.
The fallacy of the proposition is the result of the erroneous assump-. tion that such sales are absolute nullities, established for the preservation of public order and good morals, and not for the benefit of individuals, and are not susceptible of ratification, which is not so. See 33 An. 659, 1429.
A further ready answer is, that the Act mentioned was passed for. the protection and advantage of successful plaintiffs in actions to recover lands, or to subject them to existing mortgages.
That Act was not designed to abridge the right of disposing of one’s property, unless in so far as it sought, prejudicially, to affect previously acquired rights thereon.
*1036 The authority relied upon, in 2 La. 547, can have no application to a case like the present one, in which it appears, that the purchase price, the agreed value of the property sold and purchased, was computed so as to be sufficient to meet, dollar for dollar, the debt of the seizing creditor, whose privilege and mortgage were recognized, as the same could not be and were not disputed.
It is patent to our mind, that Copes could not continue to have a privilege and a mortgage on the property after he acquired it, and that while the security which he once thus had has ceased to exist in his favor, the guarantee has continued in all its vigor for the benefit of the other privilege and mortgage creditors. 25 An. 559.
The other claims, which Copes asserts as entitled to be paid out of the proceeds of the real estate, apparently amount to $18,737.12, and embrace alleged advances, keepers’ fees, overseers’ wages, hire of mules, said to have been due Charles Starr, by whom they, it is sa.id, were transferred to the third opponent, who now asks payment in his rights. The bill runs from January, 187C to 1878. It was reduced in the opposition to $10,886.93, and appears to have been acquired for the nominal sum of one dollar.
The objections to that claim are: that it is not due and not proved; that it is prescribed; that it is extinguished by a counter larger claim for damages, for which Starr is liable, in not having kept the buildings insured, which wore destroyed by fire; that he has not accounted for his administration of the plantation while under his custody, etc.
Starr acquired the place on the 2d of May, 1877. From'that day prescription began to run against whatever claim, if any, he then had, and which then ceased to increase, as he can set irp no such claim against property belonging to himself.
We, find no evidence that Starr’s claim was transferred to Copes with a subrogation to the privilege by which it is alleged to be secured. Were it so, however, Copes could have no greater rights than Starr himself, against whom the prescription of one and three years must prevail. The latter is a bar to all open accounts. The claim, if it ever existed, was due and exigible on the 2d of May, 1877, and the third opposition, in which the sum is asked to be paid, was filed on the 15th of July, 1881. R. C. C. 3538.
In their answer to Copes’ opposition, the seizing creditors charge that he coalesced with Seward in keeping them out of the exercise of their rights by frivolous and wrongful protracted litigation, and that he has thereby inflicted upon them damages to the extent of five thousand dollars.
We are not satisfied that the averments of the answer are such as can prima fade fasten a responsibility on Copes. The evidence under *1037 them is unsatisfactory and insufficient to award any damages against him. The District Judge appears to have so viewed the claim, and properly reserved the rights, if any, of the seizing creditors, to claim such damages in another proceeding.
It remains to be said, on the last branch of this litigation, that the adjudication of the proxierty to the seizing creditors by the Sheriff was legal and binding. It has, consequently, vested title in them to the land. C. P. 690.
"While the Sheriff cannot be blamed for refusing, as he did, to deliver a.deed to the adjudicatees, and for readvertising the property at the time, and cannot be held responsible in damages, C. P. 689, it is no less true that the plaintiffs, as seizing creditors, having a privilege and a conventional mortgage first in rank, had a right to withhold the amount of their bid, which was inferior to their claim. C. P. 679, 683, 718; 1 An. 144; 25. An. 146.
We find no error in the judgment appealed from, which is affirmed, with costs in both Courts.