Succession of Auch.

## No. 9952.

### SUCCESSION OF KASPAR AUCH.

A legacy to the incorporated churches of a particular Christian denomination in the city of New Orleans " to the end that the poor of said respective churches may be cared for,'' is a donation to pious uses expressly recognized in the Civil Code and highly favored by our jurisprudence.

It contains no element of a *fidei commissum* or prohibited substitution.

The uncertainty in such a designation of the beneficiaries of the bequest is a characteristic of donations to pious uses, and is no obstacle to their validity.

There is no uncertainty as to the legatees described in the will.

Charity is not foreign to the objects and purposes of incorporated Christian churches, but, on the contrary, is an essential function in their economy, and they are competent to receive and administer donations for charitable purposes.

APPEAL from the Civil District Court, for the Parish Orleans. *Rightor*, J.

---

*Henry P. Dart*, for Plaintiff and Appellant.

*Singleton, Browne & Choate*, for Defendants and Appellees:

1. The defendant corporations have the power, under their respective charters and the laws of this State, to receive the legacy in question, whether it is viewed as a legacy for charitable purposes in a strictly limited sense, or as partaking of the character of a religious charity : (*a*) because it comes with the express purposes and objects of their organization, which are, the religious worship of the Almighty God, and to cultivate and propagate the Christian religion, according to the Presbyterian faith ; (*b*) because it is a part of their religious faith, and, therefore, one of the object of their organization, that the poor members should be provided for by the corporation ; (*c*) because their rules and by-laws especially provide for the care of the poor, and the collection and distribution of the offerings of the people for pious uses ; (*d*) because it was " the will and intention of the donor " that they should receive the legacy in question. Charters ; Book of Church Order ; Will, R. S., secs. 677, 681 ; 2 R. 532 ; 9 Ann. 266 ; 7 Ann. 363 ; 3 Ann. 294 ; 17 L. 46 ; Morawetz on Corp., vol. 1, secs. 27, 327, 36, 333, 362, 364, 5 ; Perry on Trusts, sec. 43, p. 25 ; 2 How. 188 ; 15 How. 367 ; 4 Wheat. 636 ; Parish of Sutton vs. Cole, 3 Pick. 237 ; 5 Met. 155 ; Watson vs. Jones, 13 Wall. 679 ; 8 N. Y. 525 ; Domat, secs. 3585-86-87 ; Suc. McDonough, 8 Ann. 246 ; Williams vs Western Star Lodge, 38 Ann. 629.

2. The legacy in question is not too vague to be carried into effect ; the poor members of each body are well known and susceptible of positive identification. The designation in the will is sufficient in law. C. C. 1549 ; 2 R. 438 ; 12 Ann. 301 ; 8 Ann. 171 ; 38 Ann. 620 ; Domat, secs. 3337, 3588 89-90-90½ ; Bispham on Equity, p. 164 ; Perry on Trusts, secs. 687, 732.

3. The title to the legacy is vested in the churches, and not in their poor members. 2 Redfield on Wills, p. 422 ; 38 Ann. 621 ; Domat, Book 3, sec. 8, Nos. 3214-15 20.

---

The opinion of the Court was delivered by

FENNER, J.    The decedent, Kaspar Auch, left a large estate, which he disposed of by a testament containing the following clause :

"I give and bequeath to the several incorporated religious associa-.

tions of the city of New Orleans, propagating the teaching of religion according to the form of government and book of discipline of the Presbyterian Church, all the rest and residue of the property and effects which I may die possessed of, of whatever nature and kind, to the end that the poor of said respective churches may be cared for."

The executors named in the will opened the succession and caused the will to be probated.

The several incorporated Presbyterian churches of the city of New Orleans intervened in the succession by a petition praying for a citation of the executors and for a judgment recognizing them as sole residuary legatees and instituted heirs, and ordering the executors to sell the property and liquidate the succession.

After due proceedings such a judgment was duly rendered and signed. While it was in process of execution, Rosina Miller, a sister and legal heir of decedent, filed a petition citing the executors and the several residuary legatees, and praying for a judgment annulling both the will and the judgment.

The clause above quoted from the will is the basis of the attack, and its nullity is claimed on four grounds:

1st. Because it is therein attempted to create, hold and perpetuate a fund not recognized by law.

2d. Because the said clause is in effect a *fidei commissum*, and substitution in violation of law; and

3d. Because the said claimants and said legatees are incompetent to receive said legacies, the objects and purposes of same being beyond the scope of the power granted the churches by the laws of this State for the creation and government of the same.

4th. Because the said attempted distribution is too vague and indefinite, and can never be carried into effect by reason of said vagueness and indefiniteness.

The first two grounds are frivolous.

The disposition contains not a single feature of the *fidei commissum* or prohibited substitution, and is the simplest possible example of a legacy to pious uses recognized in the text of our Code and favored in its judicial construction. Rev. C. C. 1549; Suc. of Vance, 39 Ann. 371; State vs. McDonough's executors, 8 Ann. 171; Williams vs. Western Star Lodge, 38 Ann. 620; Suc. Mary, 2 Rob. 438; Fink vs. Fink, 12 Ann. 301.

As much may be said of the fourth ground. There is no intrinsic difficulty in determining what are the incorporated Presbyterian asso-

ciations of this city, and the record shows that, without any contest among themselves, they have accepted the legacy, and made proof of their identity, under the designation contained in the will.

So far as the beneficiaries of the legacy are concerned, viz: "the poor of said respective churches," there is no indefiniteness which is not inherent in all charitable bequests. This question was fully discussed and disposed of in the opinions of C. J. Eustis and Judge Rost, delivered in the McDonough will case, 8 Ann. 171, where it was said: "It is plain that under the civil law it is no objection to the validity of a legacy to pious uses, that it is for the benefit of the poor, even without any designation of locality. There is no principle better settled than that such legacies are valid. Indeed, the very generality complained of is an illustration of Christian charity; and uncertainty of individual object at the time of the gift is its character and element."

The final contention that the corporations are incompetent to take because organized solely for religious, and not for charitable purposes, involves the monstrous proposition that charity is foreign to the purpose of Christian religious organizations—even charity to their own members. This is contrary to the general knowledge which we all have of the objects and practical workings of such organizations, and is contradicted by specific evidence in regard to these particular corporations showing that the care of their poor members is a special function in their economy confided to the direction of their deacons, who are officers constituted mainly for this purpose.

The laws under which such corporations are authorized expressly provide:

"Said corporations shall be capable in law, according to the terms and conditions upon which the said corporations are formed and established, to take, receive and hold all manner of land, tenements, rents and hereditaments, and any sum of money, and any manner and portion of goods and chattels, given and bequeathed unto them or acquired by them in any manner respectively; to be employed and disposed of according to the objects, articles and conditions of the instrument upon which the corporations respectively are formed and established, or according to their articles and by-laws, or of the will and intention of the donors." Sec. 681 R. S.

Exposition of a matter so plain would be "lighting candles when the sun was shining."

Judgment affirmed.