LAND, J.
In May, 1902, Duncan Jones was appointed and qualified as receiver of the Immanuel Presbyterian Church.
An inventory was taken, showing real estate appraised at $6,750, and notes valued at $807.50.
In November, 1902, the receiver filed an account of his administration, showing some property, real and personal, still on hand. This litigation is mainly over the distribution of the proceeds of two pieces of real estate-one corner of Soniat and Camp streets, which was sold for $2,600, and the other known as No. 1021 Soniat street, which realized $2,425.
The first-described property was acquired by the church in 1880, and in the account of the receiver is styled the “Church Property.”
The receiver proposed to distribute the proceeds of this property as follows: First, certain law charges; second, payment of a special mortgage for $1,000, with legal interest from November 20, 1880, until paid, held by “The Board of Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America,” recorded November 23, 1880, and reinscribed May 15, 1897; and, third, to the payment of a judicial mortgage in favor of Owen Reidy for $3,314.66, with interest and costs.
The other described property was acquired by the church in 1899 at sheriff’s sale in the suit of the Church v. Owen Reidy, 104 La. 314, 29 South. 149. The receiver in his account proposed to distribute the proceeds- of this property as follows: First, certain law charges; and, second, the balance to Mrs. Sarah Reidy, wife of Owen Reidy, on judgment for $2,000, with interest and costs, rendered in 1902 in her favor on her intervention in the suit of the Church v. Owen Reidy.
The other cash in the hands of the receiver *351 to the credit of the “Casper Auch Poor Fund,” together with two pieces of real estate and three notes, the receiver proposed to pay over and deliver to the Presbyterian churches in New Orleans, they, with the dissolved church now under liquidation, being the churches which originally received the “trust fund” from the succession of Casper Auch.
The trial judge held that the Board of Church Erection Fund, etc., was not a mortgage creditor, and made the same ruling as to the judicial mortgages claimed by Owen Reidy and wife.
All were recognized as ordinary creditors.
The receiver was ordered to file an amended and supplemental account, which he did in due course, after having caused the remaining property to be sold.
The final account showed that after payment of privileged debts and charges there remained to be distributed among the ordinary creditors the sum of $4,689.34. This account was opposed by Owen Reidy and wife and by Louis Voss, and was, on June 22, 1903, homologated as far as not opposed. A new trial was granted, and the decree modified so as not to affect the appeals theretofore taken.
The Board of Church Erection Fund, the Presbytery of Austin, Tex., Benj. Rice For-man, and the Memorial Presbyterian Church of New Orleans appealed from this last decree.
We shall first consider the mortgage claim of the Board of Church Erection Fund. This is evidenced by an indenture or deed executed November 20, 1880, pursuant to a resolution adopted by the board of trustees of the Immanuel Presbyterian Church of New Orleans, authorizing the president of the board to sign an act of mortgage or deed of trust in favor of the Board of Church Erection Fund “to secure the sum of one thousand dollars advanced” to said church by said board. The deed executed by the president pursuant to said resolution is in the form of a common-law deed of trust or mortgage.
The deed recites that the board had granted aid to the church to the amount of $1,000 to enable the church “to erect or possess a house of worship”; that said amount is to be refunded, “with interest thereon from the time of receiving it,” in case said church shall cease to be connected with the General Assembly of the Presbyterian Church, or its corporate existence cease, or its house of worship or the mortgaged premises be alienated, or be abandoned as a house of public worship by the parties of the first part, except for the building or purchase of a better house of worship.
For the better securing the repayment of said amount, with interest, the church “granted, bargained, sold, conveyed, and confirmed” unto said board six certain lots of ground in the city of New Orleans, with all the buildings and improvements thereon. The deed contains the express condition that the estate granted shall cease, determine, and be void upon the refunding of said amount, with interest thereon from the time of receiving it, and clauses authorizing the grantee, in case of default, to sell the premises at public auction, or to foreclose in any court having jurisdiction, the overplus of the proceeds of the sale to be paid to the grantors or their successors or assigns.
This instrument was duly recorded in November, 1880, and reinscribed in May, 1897.
The church corporation was dissolved on May 12, 1902, by unanimous resolution of its members.
The district judge held that the instrument was invalid as a mortgage, and that the Board of Church Erection Fund was entitled to interest only from May 12, 1902.
The decision as to the validity of the mortgage was evidently based on the doctrine announced in Thibodaux v. Anderson, 34 La. Ann. 797.
In that case the conveyance was styled “a *353 trust conveyance” or “deed of trust in fee simple.”
.Justice Fenner, in concurring, said:
“We merely hold that the instrument before us is not, upon its face, in form or substance, a mortgage, and that its record in the mortgage book cannot give effect to it as a mortgage against third persons.”
Tissot, judge of the district court, participating, said: “It is unmistakably a sale with the power of redemption, and cannot be tortured into a mortgage.” In the original opinion the deed was characterized as a “nondescript act.” Justice Todd dissented, and Justice Levy was absent.
Whilst the instrument considered in that case was executed in the state of Louisiana, and this fact was commented upon and given weight, that circumstance, vyhile important as to questions of form or manner of execution, could not control the legal effect of the deed, as such effect is governed by the laws of this state, irrespective of the place where the contract was made.
A mortgage in the form of a sale executed in this state was recognized and enforced in Hutchings v. Johnson’s Heirs, 10 La. 245. Bullard, J., said: “It is also true, words of conveyance, such as are usual in contracts of sale, are employed. But we are to look to the substance and essence of contracts, rather than their form.” In Miller v. Shotwell, 38 La. Ann. 890, it was urged that a deed executed in Alabama, and on its face conveying title to real estate in Louisiana, should be recognized as transferring property. The court held that the legal effect of the conveyance must be determined by the laws of this state, and, it appearing that the true intention of the parties was to create a mortgage by way of security, the title did not pass.
The court referred to the case of Thibodaux v. Anderson, 34 La. Ann. 797, as having no application, and said: “The court there held that a common-law mortgage executed in Louisiana, and intending to affect property in this state, could have no effect against third parties as a mortgage.” This is too broadly stated. The deed referred to in 34 La. Ann. 797, was of such a character that the court could not deduce from its recitals the intent of the parties to execute an act of mortgage or security. In the case at bar the intention of the parties is manifest on the face of the instrument. The deed recites an advance or loan of money, to be refunded, with interest, on the happening of certain conditions; that for the better securing of the amount, with interest, the property is conveyed; that on the refunding of said amount, with interest, the estate granted to cease, determine, and to be void; that on default of payment the property shall be sold, and the overplus paid to the grantors.
It is patent on its face that this instrument is not a sale, but a mortgage or hypothecation, the title not really passing to the grantee.
This act was recorded as a mortgage in the mortgage office of the parish of Orleans.
At the time of the loan, opponent Owen Reidy was a member of the board of trustees of the church, and joined in certifying to the trustees of the erection fund that the amount of $1,000 would satisfy all claims against the church building, and leave the congregation free from indebtedness.
The same board of trustees passed a resolution authorizing its president to sign “an act of mortgage or deed of trust to secure the loan of one thousand dollars.” Owen Reidy was also the pastor of the congregation. He was not a third person.
We are of the opinion that the mortgage rights of said board should be recognized.
The oppositions of Reidy and wife to the allowance of this mortgage claim aver the amount is not secured by mortgage, that the *355 contract has never been accepted, that said amount does not bear interest, that the contract was not properly inscribed, and when reinscribed the original inscription was prescribed.
In Millaudon v. Allard, 2 La. 547, it was held that an absent person has the benefit of a mortgage in his favor, executed and registered by the mortgagor, though not accepted by the mortgagee. See, also, Hill v. Barlow, 6 Rob. 142.
Moreover, the facts show an acceptance. The deed was sent to the mortgagee, who advanced the money on its faith, and who caused the mortgage to be reinscribed.
The deed was inscribed and reinscribed in the proper office and in the proper book.
The mortgage was valid from the date of its reinscription. Gordon v. Knox, 31 La. Ann. 284; Norres v. Hayes, 44 La. Ann. 907, 11 South. 462.
The parties did not stipulate the rate of conventional interest, but it was agreed that in a certain event interest should be paid from the date of the loan, which thus was made the time the debt became due. Civ. Code, art. 1938.
Interest at 5 per centum was properly allowed from the date of the contract, to wit, November 20, 1880.
It is argued that there is no evidence that the Board of Church Erection Fund is a corporation. Suffice it to say that its claim was allowed by the liquidator, and such allowance is prima facie evidence of its capacity as a corporation or association. Its existence is shown by the evidence.
2. The Memorial Presbyterian Church of New Orleans has appealed from the two judgments of homologation. The contention of this opponent is that all the property in the hands of the receiver except the four lots and house of worship specially mortgaged to the Board of Church Erection Fund belonged to the Casper Aueh legacy left to the Presbyterian churches of New Orleans to the end that the poor of said churches might be cared for.
The receiver took this view, and his account proposed to pay the residue over to said legatees.
The history of this fund and its conversion to pay the salary of Reidy as pastor are fully set forth in the opinion of this court in the case of Church v. Reidy, 104 La. 314, 29 South. 149. In that case the judgment of the district court condemning Reidy to restore the sum of $10,947.90 of that fund was. affirmed.
In Succession of Casper Auch, 39 La. Ann. 1043, 3 South. 227, the court had previously decided that this fund was “destined to pious uses, and for the express benefit of the poor of the church.”
The two lots designated as No. 1021 Soniat street were purchased by the church in the execution of the judgment against Reidy, as were also other lots, two of which were subsequently adjudged to be the separate property of Mrs. Reidy.
The Soniat street property was sold by the-receiver for $2,424.
As to this property acquired in execution of the judgment in the case of Church v. Reidy, it is manifest that the church purchased as trustee for pious uses.
This property cannot be diverted from the-poor of the church and applied to the payment of its debts. The funds derived from the sale of this property' held in trust do not belong to the insolvent ecclesiastical corporation.
Such funds and property should be applied to the benevolent use to which they were dedicated.
On May 5, 1902, judgment was rendered in favor of Owen Reidy against the church for balance of salary in the sum of $3,314.66. This judgment was recorded in the mortgage-book on May 6, 1902, and was signed on May 12, 1902, the day on which the church corporation was dissolved by unanimous vote *357 of its members. Tbe petition for appointment of receiver was filed the next day, May 12, 1902.
The registry of the unsigned judgment did not operate a mortgage. Marchal v. Hooker, 27 La. Ann. 454.
In fixing the balance allowed by the judgment in his favor Reidy was charged with the balance due on judgment in favor of the church after deducting- amount realized under fi. fa., such balance being $5,751.66.
On May 23, 1902, Mrs. Reidy on her opposition obtained judgment against the church as follows: For two of the lots purchased by the church under execution against Reidy, one for $450 and the other for $1,375, and for $2,000 for separate funds for improvements on the lot on Soniat street. The judgment recognized no mortgage or privilege in her favor, and was not recorded until after the insolvency proceedings were filed.
The church was thus evicted as to two lots, and was condemned to pay Mrs. Reidy $2,000 for improvements on another lot which it retained.
By the judgment in favor of Reidy his claim for salary was compensated to the extent of $5,751.66 by the judgment against him for trust funds, which was affirmed by this court in 104 La. 314, 29 South. 149, already cited. While we held in that case that this fund could not lawfully be appropriated to the payment of Reidy’s salary, and condemned him to restore the amounts which had been thus misapplied, yet the judgment in the case of Reidy v. The Church compensated pro tanto the one by the other. As this judgment is res judicata, there is no legal mode for the correction of the error.
Subsequently to the rendition of the judgment in favor of Reidy for $3,314.66, Mrs. Reidy obtained judgment against the church as the purchaser of the property sold under execution in the suit of Church v. Reidy. By this judgment the plaintiff in execution was condemned to pay Mrs. Reidy, third opponent, the sum of $2,000 for improvements, and she was adjudged to be the owner of two lots adjudicated to the purchaser at the sale for the aggregate price of $1,825; making a total of $3,825'. The sale of the two lots was null. Code Prac. art. 400.
Hence this amount must be deducted from the total of $6,873.72, realized under the execution, and credited on the judgment in the suit of the Church v. Reidy; in other words, Reidy owes the church $3,825 on that judgment, an amount more than sufficient to compensate the balance due on the judgment in his favor. Considered from another standpoint, the church, as an evicted purchaser, has lost the said amount of $3,825 as fixed by the judgment in favor of Mrs. Reidy, and Reidy, the seised debtor, is bound 'to reimburse said purchaser. .Code Prac. art. 711 et seq.
Under no view can Owen Reidy be considered as a creditor of the church. . - ¡
The judgment of Mrs. Reidy is in perspnam against the church. The lot is presumed to have belonged to the community, and, if her separate funds were expended in its improvement, her claim was against the community, and could not properly have been urged until its dissolution. But, as the matter is res judicata, the judgment cannot now be disturbed. She claimed no mortgage or privilege in her petition, and none was allowed by the judgment. She did not acquire a mortgage by the registry of her judgment after the appointment of the receiver. Bell v. Railroad Co., 34 La. Ann. 785.
From the date of such appointment all the property of the church corporation was ■ in custodia legis for the benefit of creditors. Mrs. Reidy should be recognized as an ordinary creditor for the amount of her judgment, with interest and costs.
The first account filed by the receiver was provisional, dealing only with privilege and mortgage claims. The execution of the judg *359 ment of homologation was suspended by appeal, and no other account should have been filed pendente lite.
The judgment of homologation, as far as it fixed costs and law charges, was final by agreement of counsel, and has been executed. Since the rendition of the provisional account the remaining property has been sold by order of court.
The privilege claim of B. R. Forman, Esq., for $100 for professional services in the receivership was, as far as not allowed, concluded by the judgment of the district court, under the agreement of counsel referred to.
The evidence in the record does not enable us to pass with reasonable certainty on the other claims for fees for professional services urged by this opponent. There is no testimony as to the value of the services rendered, and there is a contention that opponent has received considerable sums from the church. A portion of these claims is covered by a confession of judgment signed on the eve of insolvency. We are of opinion that this opposition should be remanded for further evidence.
The claim of the Presbytery of Austin, Tex., for $185.85, is proven by the testimony of a credible witness, a minister of that church organization, and should be allowed.
It is therefore ordered, adjudged, and decreed that the judgment of homologation rendered March 12, 1903, be affirmed in the following particulars, viz.:
First. In so far as it amends and adds to the account of the receiver certain items under the head of “Liabilities,” and orders the payment of same.
Second. In so far as it recognizes Mrs. Owen Reidy as an ordinary creditor for $2,000, with 5 per cent, per annum interest from March 12, 1897, and costs of suit.
Third. In so far as it reserves the rights of ordinary creditors and of opponents in future proceedings.
And it is further ordered and decreed that said judgment in all other respects be annulled, avoided, and reversed.
And it is further ordered, adjudged, and decreed that the provisional account of the receiver filed November 18, 1902, be amended and corrected as follows, viz.:
First. As to law charges, taxes, and costs as set forth in paragraphs Nos. 1 and 2 of said judgment rendered March 12, 1903.
Second. By allowing interest on the special mortgage in favor of the Board of Church Erection Fund, etc., from November 20, 1880.
Third. By striking out the judgment in favor of Owen Reidy.
Fourth. By striking out the judgment in favor of Mrs. Sarah Reidy, with the reservation that the same be allowed as an ordinary debt.
Fifth. By decreeing that the cash and other property described or referred to in said provisional account as belonging to the “Casper Auch Poor Fund,” and the proceeds of said property, be administered separately, and, after deducting therefrom legitimate costs and charges, be delivered, in due course of administration, to (the remaining incorporated Presbyterian associations of the city of New Orleans, recognized as legatees in trust under the will of Casper Auch.
It is further ordered and decreed that the Presbytery of Austin, Tex., be recognized as an ordinary creditor for the sum of $185, with legal interest from the time said debt became due.
And it is further ordered and decreed that said receiver’s provisional account as thus corrected and amended be made the judgment of this court; that the receiver file forthwith his final account and tableau of distribution in accordance with the provisions of this judgment; that the final account filed by the receiver on June 8, 1903, and the judgments homologating same, be set aside and vacated; that the opposition of B. R. Forman be remanded for further *361 evidence, and stand as an opposition to said final account to be rendered; that all the oppositions, in so far as not sustained by this judgment, be overruled; and that the liquidator pay the costs of this appeal.
(April 11, 1904.)
PROVOSTY, J., concurs, except on the question of interest on the $1,000 debt to the Board of Church Erection Fund.