**MARYLAND CASUALTY COMPANY**
v.
**BEDSOLE & SHETLEY et al., United States of America, Intervenor.**
Civ. A. No. 8950.

United States District Court
W. D. Louisiana,
Shreveport Division.
April 15, 1964.

Sidney B. Galloway, Cook, Clark, Egan, Yancey & King, Shreveport, La., for plaintiff.

Gordon B. Golsan, Jr., Mansfield, La., for defendants.

Edward L. Shaheen, U. S. Atty., and Dosite H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for intervenor.

BEN C. DAWKINS, Jr., Chief Judge.

A stipulation of facts executed by the parties involved here has been submitted for the limited purpose of resolving the following issues:

1. The right of Maryland Casualty Company to recover from Travis F. Bedsole, John E. Shetley, Bedsole & Shetley, a partnership, and Bedsole & Shetley, Inc., or any of them, the amount of its loss as surety on contractor's bonds; and the amount of such recovery, if any.

2. The right of the United States of America to recover from Bedsole & Shetley, Inc., Travis F. Bedsole, Beatrice Bedsole, John E. Shetley and Mrs. Edna Waldroup Shetley, or any of them, on the indebtedness represented by a note dated September 9, 1960; and the amount of such recovery, if any.

3. The nature and priority of the respective rights, privileges, liens and claims of Maryland Casualty Company and the United States of America in and to any of the property now or heretofore owned by Bedsole & Shetley or Bedsole & Shetley, Inc.

There is no real controversy over issues 1 and 2. The stipulated facts clearly indicate that Maryland Casualty Company (Maryland) is entitled to recover from the named defendants $130,000.00, plus attorney's fees, costs and interest;

and that the United States is likewise entitled to the recovery which it seeks in the amount of $76,628.75, plus interest and costs including attorney's docket fees as provided in 28 U.S.C. § 1923.

For all practical purposes, the only contested issue is Number 3. Both Maryland and the government assert that their respective claims should be preferred in disbursement of the $54,317.92 now in the registry of the court as the result of a judicial sale of movable and immovable property belonging to Bedsole & Shetley, Inc.

Bedsole & Shetley originally was a Louisiana partnership, comprised of Travis F. Bedsole and John E. Shetley, engaged in business as general contractors for road construction. December 7, 1959, it entered into two highway construction contracts with the Department of Highways, State of Louisiana, and entered into another on August 15, 1960. With respect to each contract, Bedsole & Shetley, as principal, executed a performance and payment bond with Maryland as surety on each bond.

The partnership, in applying for each surety bond, executed instruments entitled, "Application for Contractor's Bond," with a sub-heading therein entitled, "Indemnifying Agreement." The contracts and the bonds were recorded in the public records of De Soto and Sabine Parishes, Louisiana, but the Applications for Contractor's Bonds were never recorded.

August 26, 1960, Bedsole & Shetley, Inc., a Louisiana corporation, was formed by Travis F. Bedsole and John E. Shetley. To comply with Louisiana law, requiring at least three shareholders in each new corporation, Mrs. Beatrice S. Bedsole, wife of Travis F. Bedsole, was named as third incorporator. August 30, 1960, Travis F. Bedsole and John E. Shetley executed instruments transferring to the corporation all of the assets owned by the partnership.

Bedsole & Shetley, Inc., borrowed $100,000.00 September 9, 1960, from the First National Bank, Mansfield, Louisiana, the loan being participated in by the Small Business Administration. It was evidenced by a promissory note executed by the corporation and secured by a mortgage on the corporate immovables and a chattel mortgage on the movables. Travis F. Bedsole, Beatrice Bedsole, John E. Shetley, and Edna Waldroup Shetley guaranteed payment of the note. Both mortgages were duly recorded in the public records.

The application for the SBA loan was made by Bedsole & Shetley, the partnership, but written upon the application was a statement that the partnership was a proposed corporation. As part of the loan application, SBA required a sworn statement which purportedly set forth all of Bedsole & Shetley's creditors. All listed creditors subsequently were paid by the Bank from the proceeds of the loan.

Bedsole & Shetley, Inc., by its actions not only acquired the assets of the partnership but also assumed its contracts, liabilities and responsibilities. Subsequent to recordation of the mortgages securing the SBA loan, Bedsole & Shetley, Inc., defaulted on the three contracts with the State upon which Maryland had issued surety bonds. Acting pursuant to its legal obligations as surety, Maryland has completed performance of the contracts and paid all unpaid suppliers and laborers. As the result, it has suffered a loss of $130,000.00.

On or about April 23, 1962, the promissory note given by Bedsole & Shetley, Inc., became due and payable in full; a balance of $76,628.75 remains unpaid. August 18, 1962, the Bank assigned the note, without recourse, to the government.

As is obvious, the fund in the registry of the court is inadequate to pay either claim in full. The government is the only party with recorded mortgages in support of its claim to a preference. However, Maryland relies upon two theories in asserting that it should be paid in preference to the government.

The first theory advanced by Maryland is that in the indemnity agreements the partnership granted it a security title

to the property. That agreement was contained in the Application for Contractor's Bond and provided:

"The undersigned will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all liability for damages, loss, costs, charges and expenses of whatever kind or nature (including counsel and attorney's fees) which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond(s) herein applied for, or any and all other bonds executed for us or at our instance and request; * * *.

"And for the better protection of the said Company the undersigned do, as of the date hereof, hereby assign, transfer and convey to the said Company all our right, title and interest in and to all the tools, plant and equipment and materials of every nature and description that we may now or hereafter have upon said work, or in, on or about the site thereof, including as well materials purchased for or chargeable to said contract which may be in process of construction, on storage elsewhere, or in transportation to said site; hereby assigning and conveying also our rights in and to all subcontracts, which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said Company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials and sub-contracts, and enforce, use and enjoy such possession upon the following conditions: This assignment shall be in full force and effect as of the date hereof should the undersigned fail to discharge any obligations of any description incurred in the performance of said contract, or be unable to complete the said work in accordance with the terms of the contract covered by

said bond(s), or in the event of any default on the part of the undersigned under the said contract, or in the event of claim or default in connection with any other former or subsequent bonds executed for us or at our instance and request."

Maryland admits that such an agreement is not a conventional one recognized by Louisiana law. But it relies upon the following cases for the proposition that such a common law agreement would be recognized by Louisiana courts as passing a security interest to Maryland: Liberty Farms, Inc. v. Miller, 216 La. 1023, 45 So.2d 610 (1950); In Re Immanuel Presbyterian Church, 112 La. 348, 36 So. 408 (1904); Herold v. Stockwell, 32 La.Ann. 949 (1880).

In none of these cases was there discussion as to the rights of the holder of a security title unrecorded in the public records, as against those of a mortgagee with a properly recorded mortgage. The Immanuel Presbyterian Church case involved a purported sale which the court indicated was actually a mortgage. Moreover, the court stated, "This act was recorded as a mortgage in the mortgage office of the parish of Orleans."

While an act worded as a sale may be held to be a security device of some kind, its rank largely depends upon what type of security device it is. An examination of the document relied upon and a study of Louisiana cases interpreting similar documents convinces us that this security device, if recognized at all, must be treated as an unrecorded mortgage.

Even if we were to hold that this attempted security device is not an unrecorded mortgage, but some other unclassified security, we do not think it may be given priority over a recorded mortgage of a subsequent creditor. The indemnity agreement purportedly passed title to movable and immovable property which was described in general terms as tools, plants, and equipment used in construction work. Even if it had been recorded, there is serious doubt that such an instrument would have been adequate

to place third parties on notice as to what property was subject to the security agreement. The property remained in the possession of Bedsole & Shetley. Even an outright sale of movable property is ineffective against subsequent *bona fide* purchasers or creditors unless there is delivery of possession. LSA–C.C. art. 2247. A pledge of movables also requires delivery to the creditor or to a third person. LSA–C.C. art. 3162.

Of course, certain privileges are effective without recordation or delivery, but they are regulated strictly by statute. No such privilege exists in favor of Maryland.

The second theory advanced by Maryland is based upon its standing as a partnership creditor of a dissolved partnership.

LSA–C.C. art. 2823 provides:

"The partnership property is liable to the creditors of the partnership, in preference to those of the individual partner; but the share of any partner may, in due course of law, be seized and sold to satisfy his individual creditors, subject to the debts of the partnership; but such seizure, if legal, operates as a dissolution of the partnership."

This action does not involve a contest between creditors of an individual partner against creditors of a partnership. However, Maryland contends the article is applicable since the partners dissolved the partnership and sold the assets to Bedsole & Shetley, Inc., without paying all the partnership creditors. Maryland argues that the partners had only a right to the residue of the partnership property after payment of partnership debts, and therefore the individuals could not execute valid transfer of the assets to the corporation. In support of this proposition, it cites LSA–C.C. art. 2823; Posner v. Little Pine Lumber Co., 157 La. 73, 102 So. 16 (1924); Toelke v. Toelke, 153 La. 697, 96 So. 536 (1923); Succession of Pilcher, 39 La.Ann. 362, 1 So. 929 (1887); Smith v. McMicken, 3 La.Ann. 319 (1848); Claiborne Mather v. Their Creditors, 18 La. 501 (1841); and LSA–C.C. art. 2890; and Moore v. Blount, 160 So. 319 (La.App. 2d Cir. 1935). If the corporation did not become owner of the property, then, it is urged, it could not grant a valid mortgage to the Bank.

Maryland contends that it was a partnership creditor at the time its assets were transferred to the corporation (a contention which is denied by the government, which asserts that Maryland did not become a creditor until subsequent default upon the construction contracts). Premised on this, Maryland urges that its claim as a partnership creditor is superior to the recorded mortgages executed by the corporation.

A clearer perspective of this tenuous argument may be gained if at this point we set forth our interpretation of the facts relating to dissolution of the partnership. The stipulated facts and documentary evidence in the record establish that the partners did not dissolve the partnership intending to pay off partnership and individual debtors, nor of partitioning the property between themselves. Basically what they sought was a change of the business entity from partnership to corporation. To accomplish this they formed Bedsole & Shetley, Inc. August 30, 1960, the partners conveyed all partnership property in documents containing the following language:

"The true consideration for the execution of this deed is that it forms a portion of the transfer to the purchaser herein of all of the assets of the partnership of Bedsole & Shetley, previously wholly owned by the vendors herein, and the vendors herein, in return for this and other properties, will receive all of the capital stock of the purchaser herein.

\*    \*    \*    \*    \*    \*

"All of those properties and assets heretofore belonging to the two vendors herein in Partnership and under the partnership name, Bedsole & Shetley, and more particularly including all of the Movable proper-

ties listed on the attached inventory."

■ Of course, the transfer was signed by the partners as such. To posit that this must have been an act of the individuals and not of the partnership ignores the law that a partnership can act only through its partners. Perhaps if there had been separate conveyances from each partner this would have been some indication of a prior dissolution of the partnership, but under the acts of conveyance in question we fail to find anything of substance to support Maryland's contention. The fact that the partners received payment in stock for the transfer is not indicative of a prior dissolution of the partnership. They would have received it whether the transfer was from the partnership or from the individual partners.

■ There was no dissolution of the partnership prior to transfer of the partnership assets to the corporation. But upon transfer of all such assets the partnership ceased to exist. LSA–C.C. art. 2876; Monteleone v. Airey, 57 So.2d 257 (La.App. Orl. Cir. 1952). By this transfer the partners could not and did not avoid personal liability to partnership creditors, and there is no indication that this was their purpose. In their application for a Small Business Administration approved loan, while still a partnership, they indicated that the partnership was a proposed corporation. All creditors whose claims were not contingent upon future events were listed. Maryland's claim had not yet accrued, since there had been no default on the construction contracts. Whether Maryland's status as a creditor relates back to execution of the original indemnity agreement need not be decided under this view of the facts and the law.

■ The partners are personally liable for the partnership debts, and the corporation also is liable for those debts. But the fact remains that the corporation received ownership of the assets involved here and it executed a valid mortgage in favor of the Bank.

Maryland is at best no more than a creditor holding an unrecorded mortgage. The privilege which it asserts under Article 2823 clearly is not applicable to the facts presented by this record. In Case v. Beauregard, 99 U.S. 119, at pages 128–129, 25 L.Ed. 370, the United States Supreme Court stated:

"* * * it has been ruled that where one of two partners, with the consent of the other, sells and conveys one half of the effects of the firm to a third person, and the other partner afterwards sells and conveys the other half to the same person, such sale and conveyances are not *prima facie* void, as against creditors of the firm, but are *prima facie* valid against all the world, and can be set aside by the creditors of the firm only by proof that the transactions were fraudulent as against them. * * * In the present case we find no such proof. We discover nothing to impeach the *bona fides* of the transaction, by which the property became vested in the railroad company.

"Thus far we have considered the case without reference to the provisions of the Louisiana Code, upon which the appellant relies. Art. 2823 of the Code is as follows: 'The partnership property is liable to the creditors of the partnership in preference to those of the individual partner.' We do not perceive that this provision differs materially from the general rule of equity we have stated. It creates no specific lien upon partnership property, which continues after the property has ceased to belong to the partnership. * * *"

If the recorded mortgage had been executed by the partnership, the mortgagee's claim would have primed Maryland's claim. No convincing reason has been presented for reaching a different result merely because of the change in the business entity from a partnership to a corporation.

The Louisiana Bulk Sales Law, LSA–R.S. 9:2961–9:2968, urged as an alternative basis for recovery by the government need not be considered, but in passing we note that Louisiana State Courts, with few exceptions, have limited application of that statute to enterprizes engaged in the business of buying and selling merchandise. Lewis Machine & Welding Service v. Amite Ready Mix Co., 148 So.2d 869 (La.App. 1st Cir. 1963); Item Co. v. National Dyers & Cleaners, 15 La.App. 108, 130 So. 879 (La.App. Orl. Cir. 1930).

The mortgages held by the United States are recognized as superior to Maryland's claim, and the government is therefore entitled to judgment for the full amount of its claim from the proceeds in the registry of the court.

John E. Shetley and Mrs. Edna Waldroup Shetley have filed notice herein of their bankruptcy petition and as to them the judgment rendered in this action shall be *in rem* against the fund in the registry of the court.

A proper judgment should be presented by counsel for the government.