## TOXAWAY HOTEL COMPANY *v.* SMATHERS & CO.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 88.   Submitted January 18, 1910.—Decided February 21, 1910.

A corporation engaged principally in running hotels is not a corporation engaged principally in trading or mercantile pursuits within the meaning of § 4, subs. *b.* of the Bankruptcy Act of 1898.

Where Congress has not expressly declared a word to have a particular meaning, it will be presumed to have used the word in its well-understood public and judicial meaning, and cases based on a declaration made by Parliament that the word has a certain meaning are not in point in determining the intent of Congress in using the word.

An occupation that is not trading is not a mercantile pursuit.

A corporation not otherwise amenable to the Bankruptcy Act does not become so because it incidentally engages in mercantile pursuit; and so held as to a hotel company which, in addition to inn-keeping in which it was principally engaged, conducted a small store as an incident to its hotel business.

FROM the facts certified it appears that the Toxaway Hotel Company was, in May, 1905, duly incorporated under the laws of Georgia. Among the purposes of the company, as stated in the application for incorporation, were these, "to conduct hotels for the accommodation of the public,  . . .   to keep, manage, conduct and carry on the business of running hotels, cottages, inns and restaurants, with their usual and necessary adjuncts, including the running of billiard and pool rooms, bowling alleys, buying and selling liquors and tobacco in all their forms, conducting and leasing news and book stands; baths of all kinds, to conduct livery stables, operating farm and fish hatcheries, to run omnibuses and transfer lines, together with all other pursuits incident to the operation of hotels." The company acquired and operated six hotels, situated in a thinly populated part of the mountains of western

North Carolina, having an aggregate capacity of seven hundred and fifty guests. These were carried on from March, 1905, until October, 1906, when an assignment was made. Within four months after such assignment creditors filed a petition seeking to adjudicate the corporation a bankrupt, as having been "engaged principally" in trading and mercantile pursuits. It contested adjudication and averred that it was not a corporation subject to involuntary proceedings, as it had not been principally engaged either in "trading" or "mercantile pursuits," but was a hotel company, and, as such, was not one of the class of corporations specified in the fourth section of the Bankrupt Act, as amended.

The material facts as to the character of the business done by this corporation are these:

"That the business done by the corporation at these hotels during the first season, from March to October, 1905, as shown by the receipts, amounted to $119,171.36; and that done during the second season, from January 1st to October 1st, 1906, as shown by the receipts, amounted to $127,136.01.

"That during 1905 and until June, 1906, the said corporation did no other business than conducting hotels, excepting the cultivation of a small farm connected with one of the hotels, for the purpose of supplying vegetables and garden truck.

"That in June, 1906, said corporation acquired and began conducting two country stores—one located at Toxaway Inn and the other at Lake Sapphire, and Fairfield Inn. In these stores were kept stocks of general merchandise, such as is usually carried in country stores, to wit, dry goods, groceries, notions, hats, caps, clothing, a small assortment of hardware, flour, meal, meat, feed, etc., the average value of each stock being from three to four thousand dollars.

"The said hotels were located in a thinly settled section of the mountains of North Carolina, quite a distance from any town; that the stores furnished the hotels from their stocks, and, also, with such produce and other things necessary for

the hotels as came into the stores, and they, also sold goods and merchandise to people generally; and, also, bought and sold some tanbark. That from two-thirds to three-fourths of the goods handled by these stores went as supplies to the hotels on orders from the stewards of the hotels, and the remainder were sold generally, principally to employés of the corporation, and also to the people at large. That the business of the hotels and the stores was kept without separation in one set of books. The corporation, also kept a bar in the Toxaway Inn, at which liquors were sold exclusively to the guests, and had a number of boats and launches on the lakes at Toxaway Inn and at Fairfield, which it hired to patrons when called for.

"That said corporation employed about 130 persons in and about the hotels, and four persons in and about the stores."

Upon these facts the bankrupt court adjudicated the corporation bankrupt. An appeal was allowed to the Circuit Court of Appeals, and the question certified as to whether, upon the facts stated, this hotel company is subject to the provisions of the Bankrupt Act and liable to be adjudicated a bankrupt.

*Mr. T. F. Davidson, Mr. Louis M. Bourne, Mr. Haywood Parker, Mr. John M. Slaton, Mr. Ben Z. Phillips,* for the Toxaway Hotel Company:

The facts show that the Toxaway Hotel Company was a corporation whose principal business was to conduct hotels which is neither a manufacturing, trading, printing, publishing, mining, or mercantile pursuit, and therefore under § 4, subd. *b* is not subject to the bankruptcy law.

The present bankruptcy law has restricted the corporations against whom proceedings can be taken, and many corporations which were in the purview of the law of 1867 are not amenable to the present law. While in *Re San Gabriel Sanitorium Co.,* 95 Fed. Rep. 271, a sanitorium company was held subject to the bankruptcy law—that case has never been followed but has been disapproved. See *Re Cameron Ins. Company,* 96 Fed. Rep. 756; and *Re N. Y. & Westchester Water*

,Co., 3 Am. B. Rep. 508; aff'd *sub. nom., Re Morris*, 102 Fed. Rep. 1004, which are the two leading cases on the question.

Following the reasoning of these cases, and in the twenty-six cases cited courts have held the corporations under consideration not amenable to the bankruptcy law:

Massachusetts: *Re H. J. Quimby Freight F. Co.*, 10 Am. B. Rep. 508; *Re N. Y. Building & Loan Co.*, 127 Fed. Rep. 471; *Re N. Y. & N. J. Ice Lines*, 14 Am. B. Rep. 61.

New Jersey: *Re Tontine Surety Co.*, 8 Am. B. Rep. 421.

Pennsylvania: *Re Oriental Society*, 5 Am. B. Rep. 219; *Re Woodside Coal Co.*, 5 Am. B. Rep. 186; *Re Keystone Coal Co.*, 6 Am. B. Rep. 377; *Re Phil & Lewes Co.*, 7 Am. B. Rep. 707; *First Nat. Bank* v. *Wyoming*, 14 Am. B. Rep. 448; *Gallagher* v. *Delancey Stables*, 19 Am. B. Rep. 801.

Virginia: *Re McNichol Const. Co.*, 14 Am. B. Rep. 188.

Georgia: *Re Fulton Club*, 113 Fed. Rep. 997.

Alabama: *McNamara* v. *Helena Coal Co.*, 5 Am. B. Rep. 48.

Texas: *Re Bay City Irrigation Co.*, 14 Am. B. Rep. 370.

Missouri: *Re Cameron Town Insurance Co.*, 2 Am. B. Rep. 372; *Re Chicago & Joplin Co.*, 13 Am. B. Rep. 712.

Illinois: *Re Snyder & Johnson Co.*, 13 Am. B. Rep. 325.

Michigan: *Re Toledo Cement Co.*, 19 Am. B. Rep. 117.

Wisconsin: *Re White Star Laundry Co.*, 9 Am. B. Rep. 30.

Colorado: *Re Elk Park M. & Mining Co.*, 4 Am. B. Rep. 131; *Re Chesapeake Fish & Oyster Co.*, 7 Am. B. Rep. 173.

Arizona: *Re Min. & Ar. Construction Co.*, 60 Pac. Rep. 881.

California: *Re Pacific Warehouse Co.*, 10 Am. B. Rep. 474; *Herron Co.* v. *Superior Court*, 68 Pac. Rep. 814.

The Circuit Court of Appeals in eight circuits have passed on the question in the following eighteen cases, and all, with one exception (that for the Eighth Circuit), have given a similar interpretation to the language of the act.

First Circuit: *Philpot* v. *O'Brien*, 11 Am. B. Rep. 205; *White Mountain Paper Co.* v. *Morse et al.*, 127 Fed. Rep. 643; *Burdick* v. *Dillon*, 144 Fed. Rep. 737.

Second Circuit: *Re Morris*, 102 Fed. Rep. 1004; *Re N. Y.*

& N. J. Ice Co., 16 Am. B. Rep. 832; Re Kingston Realty Co.,
19 Am. B. Rep. 845; Altonwood Co. v. Gwynne, 20 Am. B. Rep.
31; Re Wentworth Lunch Co., 20 Am. B. Rep. 29; Re Marine
C. & D. Dock Co., 130 Fed. Rep. 446.

Third Circuit: Re Zugella & Int. M. Agency, 16 Am. B. Rep.
67; Hall & Kaul v. Friday, 19 Am. B. Rep. 841.

Fourth Circuit: Butt v. McNichol Const. Co., 14 Am. B.
Rep. 188.

Sixth Circuit: Columbia Iron W. v. Nat. Lead Co., 62 C. C.
A. 99; United States Hotel Co. v. Niles, 13 Am. B. Rep. 403,
reversing the District Court, and holding that conducting a
hotel is not a trading pursuit.

Seventh Circuit: Re Surety Guaranty Trust Co., 9 Am. B.
Rep. 129; Re Parmlee Library, 9 Am. B. Rep. 568; Re E. T.
Hill Co., 17 Am. B. Rep. 517.

Eighth Circuit: Re First Nat. Bank of Belle Fouche, 152
Fed. Rep. 64.

Congress did not so amend as to include water companies,
insurance companies, theatrical companies, restaurant com-
panies, saloon companies, social clubs, carrier companies,
companies buying and selling stocks and bonds, or laundry
companies, all of which had been decided not to be within the
classes enumerated by the act, and therefore not amenable to
bankruptcy; and this, too, after the very general circulation
and discussion of the proposed amendments as shown above,
by the report of the judiciary committee. While this court
may think it advisable that corporations like the one here in
question should be brought within the scope of the bankruptcy
act, it must be guided by what Congress has said, and not by
its own view of public policy. Re Quimby Freight Co., supra,
and for history of act in Congress, see Cong. Rec., 1897,
Vol. 30, pp. 602, 606; Cong. Rec., 1898, Vol. 31, p. 1779, and
same vol., pp. 1939, 6298, 6427, 6428.

The House of Representatives on February 6, 1909, passed
a bill, H. R. 21,929, further amending the present law, and
which shows that the House clearly understood that the in-

tention of the original law was to restrict the classes of corporations which could be adjudged bankrupts. Sixtieth Cong., 2d Sess., H. R. Report, 1834, p. 2.

A hotel corporation conducting hotels is not engaged in a trading or mercantile pursuit within the meaning of the bankruptcy act. *Re Chesapeake Oyster & Fish Co.*, 112 Fed. Rep. 960; *Re Barton Hotel Co.*, 12 Am. B. Rep. 335; *United States Hotel Co.* v. *Niles*, 134 Fed. Rep. 225; *Gallagher* v. *Delancey Stables*, 158 Fed. Rep. 381; *Re Wentworth Lunch Company*, 159 Fed. Rep. 413.

To be subject to the bankruptcy law a corporation must not only be engaged in one of the pursuits enumerated in § 4, subsection *b*, but must be "principally" so engaged, a mere incidental occupation therein will not suffice. 1 Remington on Bankruptcy, ed. 1908, § 85; *Re Mackey*, 110 Fed. Rep. 355; *Re Drake*, 114 Fed. Rep. 229; *Woodburn* v. *Drake*, 120 Fed. Rep. 493; *Re Quimby Co.*, 10 Am. B. Rep. 424; *Philpot* v. *O'Brien*, 11 Am. B. Rep. 205; *Bank* v. *Matney*, 132 Fed. Rep. 75; *Rice* v. *Bordner*, 144 Fed. Rep. 566; *Zugella* v. *Int. Mer. Agency*, 16 Am. B. Rep. 67; *McNamara* v. *Helena Coal Co.*, 5 Am. B. Rep. 48.

*Mr. Julius C. Martin* for J. L. Smathers & Co.:

A hotel corporation is subject to bankruptcy as a corporation engaged in trading or mercantile pursuits under § 4, subd. *b* of the act of 1898.

A trader is "one whose business is to buy and sell merchandise or any class of goods deriving a profit from his dealings." Bouvier's Law Dict.; *Re Smith*, 2 Lowell, 69; *S. C.*, 22 Fed. Cas. No. 12,981; *Re Chandler*, 1 Lowell, 478; *S. C.*, 5 Fed. Cas. No. 2,591; 4 Nat. Bankr. Reg. 213; *Wakeman* v. *Hoyt*, 28 Fed. Cas. No. 17,051.

Among persons held to be traders under former acts are: Bakers, *Re Cocks*, 5 Fed. Cas. No. 2,933; inn-keepers, *Re Ryan*, 21 Fed. Cas. No. 12,183; livery stable keepers, *Re Odell*, 18 Fed. Cas. No. 10,426.

Under the present act the following persons, among others, have been held to be traders: Livery stable keepers, *Re Morton*, 108 Fed. Rep. 791; Sanitarium Company, *Re San Gabriel Sanatorium Company*, 95 Fed. Rep. 271; *Re Barton Hotel Company*, 12 Am. B. Rep. 405; Real Estate Company, 154 Fed. Rep. 299; Laundry Company, 132 Fed. Rep. 266. Constructing and repairing vessels is a mercantile pursuit, see 127 Fed. Rep. 99; Mercantile Agency, *Re Mercantile Agency*, 111 Fed. Rep. 152.

The Toxaway Hotel Company was both a buyer and a seller. *Re Odell*, Fed. Cas. No. 10,426.

Each case will necessarily turn on its own facts. It is not to be doubted, however, in this particular, that the law is to be interpreted liberally to effectuate its purpose, that is, that all business corporations, as distinguished from public, quasi-public, money-saving or lending corporations, shall be amenable to bankruptcy. Collier on Bankruptcy, 5th ed., p. 64.

It does not appear in the record in this case, whether the debts of the creditors set out in the petition were debts contracted by the company as a merchant, for goods sold to its stores, or as a hotel keeper for provisions sold it for its hotels. These matters are important. See *Armstrong* v. *Fernandez*, 208 U. S. 324, 330; *Olive* v. *Armour Company*, 167 Fed. Rep. 517. The language of the statute, when construed according to the natural meaning of the words, would refer to the occupation of the alleged bankrupt as of the time of filing the petition in the case. *Flickenger* v. *First Nat. Bank*, 145 Fed. Rep. 162. The occupation at the time of committing the alleged act of bankruptcy is the test. At that time (November) the Hotel Company was engaged exclusively in mercantile business, as the hotels were closed. *Re Matson*, 123 Fed. Rep. 743.

MR. JUSTICE LURTON, after stating the facts as above, delivered the opinion of the court.

The act of 1867 applied to "all moneyed business or com-

mercial corporations and joint-stock companies." The present act applies only to such corporations as are "principally engaged" in certain enumerated kinds of business. That of inn-keeping, though as old as civilization, is not specifically enumerated. Unless, therefore, a corporation engaged in the business of hotel keeping is embraced within one or the other of those which are enumerated, it is not liable to an involuntary adjudication.

The contention is that this was a corporation principally engaged in "trading" or "mercantile pursuits."

For the present we shall only deal with the bare question as to whether inn-keeping is within a proper definition of "trading" or "mercantile pursuits." The keeping of a bar, cigar and news stand are obviously but ordinary incidents to the main business when conducted within the inn, and primarily for the convenience of guests. The maintenance of a livery and of small pleasure boats for the accommodation of guests may also be accepted as merely incidental to that class of hotels called resorts. The significance of the fact that this company did, in addition to the ordinary business of hotel keeping, engage to a certain extent in an outside trading or mercantile business will later be considered.

Having thus narrowed the question, we must answer that a corporation engaged principally in running hotels is not a corporation engaged principally in "trading" or "mercantile pursuits." An innkeeper is one who maintains a house for the entertainment of strangers, for a reasonable compensation. To secure this compensation he is given a lien upon the property of his guests within the inn. For this property he is under liability much like that of a common carrier. So long as he has room, he must receive all who may apply and are fit persons. He may not discriminate. To say that he buys and sells articles of food and drink is only true in a limited sense. Such articles are not bought to be sold, nor are they sold again, as in ordinary commerce. They are bought to be served as food or drink, and the price includes

rent, service, heat, light, etc. To say that such a business is that of a "trader" or a "mercantile pursuit," is giving those words an elasticity of meaning not according to common usage.

Until changed by a Parliamentary declaration in 1825, Act 6, George IV, c. 16, defining the persons included under the term "trader," as used in the bankrupt and insolvency acts, it was held that an innkeeper was not a tradesman. *Newton* v. *Trigg*, 1 Showers, 96; *Luton* v. *Bigg*, Skinner, 276, 291; *Willitt* v. *Thomas*, 2 Chitty, 691.

In *Luton* v. *Bigg* it was said of an innkeeper: "He is in the nature of a public person, and his house and occupation a thing of necessity, and his gain does not arise from the victuals which he sells, but from his furniture and attendance."

In *Newton* v. *Trigg*, cited above, it was said: "An innkeeper cannot get his own prices, but is bound to a reasonable price. A tradesman may sell to whom he pleases. An innkeeper cannot refuse his guest. He doth not get by buying and selling. He gets by the price and hire of his lodging, also by the profit on the ale of kitchen. The profits from his stables do not arise from hay alone, but from the standing."

Congress having never by express legislation declared an innkeeper a "trader," it must be presumed to have used the word in its well-understood public and judicial meaning, and cases based upon a Parliamentary meaning are not in point. See *Hall* v. *Cooley*, Fed. Case No. 5,928, and *In re Cote*, Fed. Case No. 3,267, where Judge Lowell, referring to the declaratory act giving a list of occupations which should constitute trading, said that Congress "had not defined a tradesman and the question was therefore addressed to the common usage of this country and to the judge's knowledge of his own language." He defined a tradesman "as substantially the same as shopkeeper." In the case styled *In re Smith*, Fed. Case No. 12,981, the same learned judge adopted the definition of Bouvier, who defines a tradesman as "one who makes it his business to buy merchandise or goods or chattels to sell again

for the purpose of making a profit." If the occupation of
inn-keeping is not "trading," it is not a "mercantile pursuit,"
for little more than a broader significance can be given to that
term than to "trading." It is, in fact, trading in the larger
sense. "Mercantile" is defined "as having to do with trade
or commerce; of or pertaining to merchants, or the traffic
carried on by merchants" (Century Dictionary). To be
principally engaged in a mercantile pursuit one must be
carrying on commerce in some of its branches. See *In re
Cameron Insurance Co.*, 96 Fed. Rep. 756; Loveland on Bank-
ruptcy, § 48; *In re New York & W. Water Co.*, 98 Fed. Rep.
711. The conclusion we reach accords with that announced
by the Sixth Circuit Court of Appeals in *In re United States
Hotel Co.*, 134 Fed. Rep. 225, where the matter is considered
and the cases bearing upon the subject reviewed.

But it is said that although this was a hotel company and
engaged in doing the business of an innkeeper, it was in fact
principally engaged in trading and mercantile pursuits. If so,
that is the end of the matter, for liability under the act is
dependent upon what it was actually doing rather than upon
what it was organized to do or professed to be doing. See *Fri-
day* v. *Hall & Kaul Co.*, just decided.

It may have been engaged in doing two distinct kinds of
business. But unless this corporation was "engaged prin-
cipally" in mercantile pursuits, it was not amenable to the
act. "Engaged principally" are plain words of no ambigu-
ous meaning. They need no construction. Amenability to
the statute must turn upon the facts of the case where, as
here, the same corporation was engaged in "mercantile pur-
suits" in addition to inn-keeping. There is no way to settle
whether it was "engaged principally" in the one or the other
but by a comparison of the two. When we do this it is easy
to see that the mercantile business which it did was of minor
character and was largely an incident to the location of the
hotels of the company in a thinly settled mountainous region.
The stores were country stores—that is, stores dealing in a

great variety of ordinary necessities. From two-thirds to three-fourths of the goods handled were used in the running of the hotels, upon order of the stewards. Much of the remainder were sold to the employés, and the rest to customers at large, who paid in money or bartered country supplies for goods. The average stocks carried were from three to four thousand dollars in value. They were in a large sense hotel commissaries. The business was done but for one season. If we compare the volume of that done by the innkeeping business proper with that done by the stores the minor character of the latter is plain. The hotels employed one hundred and thirty persons; the two stores, four. The receipts of the hotel business plus the mercantile business— for all were kept upon one set of books—for the year 1906 were $127,136.01. The receipts for the previous year, when no stores were operated, were $119,171.36. The volume of mercantile business must have been small compared to the volume of the hotel business proper. That the company was "engaged principally" in the hotel business proper is plain. It was, therefore, not amenable to the act.

The answer to the interrogatory of the Circuit Court of Appeals must, therefore, be in the negative.