SWIFT AND COMPANY v. JAMES TEMPELOS, TRADING AS THE "BUSY BEE CAFE," AND J. E. BEFARRAH.

(Filed 12 November, 1919.)

**1. Statutes—Common-law Right—Sales in Bulk.**

The statute making void as against creditors a sale of a large part or the whole of a stock of merchandise in bulk, unless the requirements of the act are complied with, is in derogation of the common law, and must be strictly construed. Gregory's Suppl. Pell's Revisal, sec. 964a.

**2. Same—"Merchandise"—Restaurants—Provisions—Furniture—Fixtures.**

Within the intent and meaning of our statute relating to the sale of merchandise in bulk, the word "merchandise" is limited to things ordinarily bought and sold in the way of merchandise, the subject of commerce and traffic, and does not include a stock of provisions or supplies kept in a restaurant to be prepared and served to its customers for meals, or to the furniture and fixtures used therein in connection with conducting the business of a restaurant.

CIVIL ACTION, tried before *Allen, J.,* at January Term, 1919, of WAKE.

The plaintiff alleged that the defendant, James Tempelos, who owned and conducted an ordinary restaurant in the city of Raleigh, at No. 225 South Wilmington Street, known as the "Busy Bee Cafe," was, at the commencement of this action, indebted to it, for goods sold and delivered, in the sum of $755.90, which has been due since 12 November, 1917, and that while that amount was still due to it, the defendant sold and conveyed to his codefendant, J. E. Befarrah, all the property in said restaurant, consisting of canned goods and other groceries and food supplies, and the furniture and fixtures used in connection with the business, for $2,300, and that the sale was made in bulk, contrary to the "Bulk Sales Law" (Gregory's Suppl. to Pell's Revisal, sec. 964a), which reads as follows: "The sale in bulk of a large part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in regular and usual prosecution of the seller's business, shall be *prima facie* evidence of fraud, and void. as against creditors of the seller unless the seller," etc. Plaintiff, therefore, alleges that, as the requirements of that act were not complied with by the parties to the. sale it is void and of no effect against the creditors of the defendant, James Tempelos. Plaintiff prays judgment for the debt, and that the property be seized and applied to its payment.

Defendant answered and denied the material allegations, except as to the debt due the plaintiff and the sale of the goods.

The jury returned the following verdict:

"1. Is the defendant Tempelos indebted to the plaintiff, and if so, in what amount? Answer: $755.90, and interest from 12 November, 1917.

"2. What was the value of the goods purchased from Tempelos by the defendant Befarrah, other than the fixtures, that is to say:

"(1) What was the value of the eggs?    Answer: $200.

"(2) What was the value of all, including the eggs?    Answer: $450."

The court gave judgment against J. E. Befarrah for $450, and directed that the $200, the value of the eggs, which had been attached, be applied to it as a credit thereon. It also adjudged that the property, which was sold by Tempelos to Befarrah, be seized under execution, or other legal process, and sold for the satisfaction of the balance of the judgment. There seems to have been no judgment for the debt of $755.90 against James Tempelos, but that may not be material in the view taken of the case, and may yet be entered below, if desired, when the case is remanded for judgment there.

Defendant, James Befarrah, appealed from the judgment.

*J. M. Broughton for plaintiff.*

*J. C. Little and Manning, Kitchin & Mebane for defendant.*

WALKER, J., after stating the facts as above: The question is, Whether the goods and fixtures used in a restaurant, which is conducted on the ordinary plan, is a "stock of merchandise" within the words and meaning of the "Bulk Sales Act," copied above? We do not think that they come within that designation. The "Bulk Sales Act" is in derogation of the common law, and must be strictly construed. *Fairfield Shoe Co. v. Olds,* 176 Ind., 526; *Cooney v. Sweat,* 133 Ga., 511, 512; *Taylor v. Folds,* 2 Ga. App., 453; 9 Current Law, 1511.

It is said that the word "merchandise" is usually, if not almost universally, limited to things which are ordinarily bought and sold, in the way of merchants, and as the subjects of commerce and traffic. *Van Patten v. Leonard,* 55 Iowa, 55; Burwell's Law Dictionary. The word came into use as a term descriptive of the goods and wares exposed to sale in fairs and markets. *Passaic Mfg. Co. v. Hoffman,* 3 Daly (N. Y.), 495-512. Speaking of an innkeeper, it is said in *Toxaway Hotel Co. v. Smathers,* 216 U. S., 439-446, and it may be affirmed with great force and significance of a restaurateur: "To say that he buys and sells articles of food and drink is only true in a limited sense. Such articles are not bought to be sold, nor are they sold again, as in ordinary commerce. They are bought to be served as food and drink, and the price includes rent, service, heat, light, etc. To say that such a business is that of a 'trader' or a 'mercantile pursuit' is giving those words an elasticity of meaning not according to common usage." The specific subject is treated with closer reference to our facts, and more at large, in the case of *In re Wentworth Lunch Co.,* 159 Fed. Rep., 413, where it is held, pp. 414-415:

"The specific categories of the section are corporations engaged principally in printing, publishing, and mining, under which, clearly, a restaurant company does not fall. It remains to inquire whether it falls within the general categories of the section, viz., corporations engaged principally in manufacturing, trading, or in mercantile pursuits. In one sense of the word, transformation of raw provisions into cooked dishes is manufacturing; but no one would ever speak of a cook as a manufacturer, and that category may be excluded. A trader is one who buys to sell again, a definition which might apply to a saloon, but not to a restaurant, where the proprietor does not sell the provisions he buys in the form in which he buys them, but changed by combination and cooking into edible dishes. The word 'mercantile,' though including trade, is larger, being extended to all commercial operations, so that we speak of shipping merchants, commission merchants, and forwarding merchants. Still we do not think that the dishes of a restaurant would ever be described as merchandise, or the proprietor as a merchant, or as engaged in mercantile pursuits. Printing and publishing companies were specified, presumably because they did not fall within the general categories, and we think the same reasoning applies to a restaurant company." See, also, *In re Chesapeake Oyster & Fish Co.,* 112 Fed. Rep., 960, and *In re Excelsior Cafe Co.,* 175 Fed. Rep., 294, where it is said: "A trader is one who buys to sell again, a definition which might apply to a saloon, but not to a restaurant; and, further, the Circuit Court of Appeals, in that opinion (*Matter of Wentworth Lunch Co., supra*), holds that the word 'mercantile' is not broad enough to cover the business of keeping a restaurant for the cooking and selling of food. This case is the latest and the controlling decision upon the question." The Supreme Court of Iowa had this question before it, and held, that the permission, in a contract, to use the building for "any mercantile purpose," granted pursuant to plaintiff's application, does not authorize the use for a restaurant, which is not a mercantile purpose. The word "mercantile" means "pertaining to merchants, or the business of merchants; having to do with trade, or the buying and selling of commodities; commerce" (Webster). The business of keeping a restaurant is in no sense commerce. If a restaurant be a mercantile establishment, the term is equally applicable to taverns, boarding-houses, and the like, which cannot be admitted. The point demands no further attention. Permission to use a building for "any commercial purpose" does not authorize its use as a restaurant. 81 Iowa, 727-729. This case was approved in 92 Iowa, 293.

The Federal cases cited above arose under the Bankrupt Act, but this fact did not in any degree influence the decisions of the Courts. They considered the question as one of general law, and construed the statute

according to the ordinary, natural, and popular meaning of its language, and as understood among merchants and traders.    *In re Kingston Realty Co.,* 160 Fed. Rep., 445; *In re N. Y. & W. Water Co.,* 98 Fed. Rep., 711-713; *In re U. S. Hotel Co.,* 134 Fed. Rep., 225.    Referring to the business of the tavern-keeper, and quoting from *Newton v. Trigg,* 1 Showers, 96, *Justice Lurton* says, in the *Hotel Co. case:* "He doth not get by buying and selling, but by the price and hire of his lodging; also by the profit on the ale of his kitchen.    The profits from his stables do not arise from hay alone, but from the standing."    *Gallagher v. DeL. S. Co.,* 158 Fed. Rep., 381.

In that case the Court said:    "I think it so clear that the corporation (engaged in keeping a boarding stable) was principally engaged neither in trading nor in mercantile pursuits that discussion is unnecessary.    It is well settled that a trader or a merchant is a person who is engaged in the business of buying and selling, one who buys in order to sell; and I think it must be conceded that the foregoing facts do not bring the bankrupt within either class—if, indeed, the two classes should be distinguished."

And finally, in the case of *In re Willis C. & A. Co.,* 178 Fed. Rep., 113-114, it was said: · "It was carefully pointed out (in the *Wentworth Lunch Co. case, supra*) that the preparation of food by cooking was not manufacturing, and that the sale of the food so prepared by an incorporated restaurant-keeper in small quantities to the ultimate customer was not a mercantile or trading occupation.    Preparing pies by the thousand and biscuits by the ton might perhaps savor of manufacturing; but it is obvious that the vending thereof to the consumer on the premises is something not to be performed by one engaged in mercantile or trading pursuits.  .  ·  .    It is plainly impossible to draw any practical distinction between feeding men and feeding horses."

The words, "stock of merchandise," in our statute are used in the common and ordinary acceptation of those terms, and mean the goods or chattels which a merchant holds for sale, and are equivalent to "stock in trade," as ordinarily used and understood among merchants and tradesmen.    *Off & Co. v. Morehead,* 126 Am. St. Rep., 184-187.

But it is contended that it was held in *Plass v. Morgan,* 36 Wash., 160, that a restaurant or cafe comes within the meaning and operation of the "Bulk Sales Law," but a careful reading of that case leads us to believe, without much hesitation, that the learned Court based its decision entirely upon the peculiar and "comprehensive" language of their statute, and it appears that, if it had not been for this feature of the case, the result would have been different.    And we say so, because counsel for the respondent there contended that the law uses the special term, "stock of merchandise," which, according to accepted English definitions,

relates to the business of merchandising alone, and was clearly so intended by the Legislature; that Courts will not so construe the language of the statute as to make it include that which its plain and usual meaning will not import, or render its application absurd or ridiculous in its operation. In answer to this suggestion, the Court, after repeating the contention, stated that the learned counsel, however, did not strictly quote the language of their statute. "It does not use the special term, 'stock of merchandise,' but uses the term, 'any stock of goods, wares, or merchandise in bulk.' The word 'any' is comprehensive, and so is the word 'stock.' There is no limit placed by the Legislature on the meaning of the word 'stock.'" The Court laid great stress upon the use of the words, "*any* stock of goods and wares," which are not in our statute, and seemed to think, when replying to counsel's argument, that a "stock of merchandise," by itself, would be too restricted and not be sufficient in its scope to include a restaurant or cafe, and if this be not so, why suggest to counsel the difference between his language and that of the statute, if the two were synonymous, one not embracing any more, in meaning, than the other. And it was said, in *Johnson v. Kelly,* 155 N. W. (N. Dak.), 683, that the Washington Court, in the later cases of *Albrecht v. Cudihee,* 37 Wash., 206, and *Everett v. Smith,* 40 Wash., 566, had practically receded from its holding in the earlier case. We need not express an opinion as to whether this be correct or not.

The Court said, in *Johnson v. Kelly, supra:* "The decision in *Plass v. Morgan* is based upon the terms of their bulk-sales statute, voiding sales of 'any stock of goods, wares, and merchandise.' The word 'any' was held to broaden the statute, making it apply to 'any stock,' which therefore covered restaurant stocks. Our statute does not so read, but by its plain terms applies only to stocks of merchandise or goods, a part of 'mercantile stock or supply which is kept for sale.'" It also is true that the Court distinguished that case from one like ours by directing attention to the special words of the local statute, emphasizing the use of the word "any," and laid stress upon the use of the other words, "goods and wares." So that the case, when properly considered, lends strong support to our conclusion.

The statute was evidently intended to apply to a stock of merchandise, in the sense of a stock of goods which have been bought for resale in a substantially unchanged condition, and not to a stock of provisions on shelves, or in a pantry, or storeroom, kept for no other purpose than to supply the tables, and provide meals for the patrons and customers of the restaurateur. This is not selling articles kept in stock, but furnishing meals to those who come for them at a stated price. The groceries are not bought by him in the raw state, and some of them have completely lost their identity when prepared for the table. The customer

buys only a meal to satisfy his hunger. This is not selling at retail, according to our common understanding. The statute contemplates a stock, which is itself kept for sale, and when there is a sale out of the ordinary and regular course of business, it is fraudulent, if in other respects it violates the provisions of the statute.

Learned counsel for the plaintiff has cited us to several cases, which he contends are analogous to this one, where it was held that the sales of the stocks were governed by the statute, but we do not see the similarity, and we think they can easily be distinguished, such as the stocks of drug stores, saloon-keepers, retailers of crackers and biscuits, butchers who sell meat products, stock of a garage (*Gallup v. Rozier,* 172 N. C., 283), and others, perhaps, of like kind could be mentioned, but they are not parallel cases.

If we should hold that this stock was within the "bulk-sales" statute, it would seem that it should be extended also to a stock of supplies or provisions kept by a boarding-house proprietor, and we would long hesitate before coming to such a conclusion. As said in one of the cases cited by us (216 U. S., 439), such a view of the law would be utterly inadmissible, and, we may add, indefensible.

As to the furniture and fixtures used in the business of the keeper of the cafe, they are not kept for sale, and are not within the provisions of the statute. Now, if this stock itself is within it, it may be that, when the furniture and fixtures are sold with it, so as to be, in fact, a "clean-up" sale of the whole business, the appellee's position might, perhaps, be correct, but we do not decide, or intimate any opinion as to such a question. Our view coincides with that of the Court which decided *Gallus v. Elmer,* 193 Mass., 106, and, as it is clearly expressed in that case, we state it in the language there used: "The plaintiff still further insists that the statute does not apply to the fixtures, and this view seems correct. The phrase, 'stock of merchandise,' as used in the statute, properly and naturally describes articles which the seller keeps for sale in the usual course of his business. It does not naturally describe fixtures. It would hardly be within the usual course of business for a storekeeper at any time to sell his fixtures, and it is not to be presumed that the Legislature intended to prohibit the sale of a fixture, unless such intent is clearly expressed. The natural reading of the statute makes it applicable, as has been said, only to the articles which in the ordinary course of his business the seller keeps for sale, and that must be taken to be its legal meaning," citing *Albrecht v. Cudihee,* 37 Wash., 206.

We are constrained to think that the learned judge was in error when he held that the sale of the cafe stock was governed by the bulk-sales statute, and, therefore, was fraudulent and void within the meaning and intent of the same, the defendants not having complied with its terms.

This being so, the evidence fails to establish any cause of action, under the statute, and none is stated in the complaint against J. E. Befarrah. This suit should, therefore, be dismissed as to him, and judgment to that effect will accordingly be entered below. Plaintiff may have judgment upon the verdict against James Tempelos, its debtor, if so advised.

Error.