ITEM CO., LTD., v. NATIONAL DYERS & CLEANERS, LTD., ET AL.

———

(November 17, 1930.  Opinion and Decree.)
(December 1, 1930.  Rehearing Refused.)
(January 6, 1931.  Writs of Certiorari and Review Refused by Supreme Court.)

———

Deutsch & Kerrigan, of New Orleans, attorneys for plaintiff, appellant.

F. A. Middleton, of New Orleans, attorney for defendants, appellees.

JANVIER, J.  The Item Company, Ltd., seeks to recover for certain advertising matter published for National Dyers & Cleaners, Ltd., which concern was the sole defendant named in the original petition and which, in answer to that petition, filed a general denial.

Before the matter came up for trial, plaintiff, in a supplemental petition, alleged that while the case was pending on the trial docket on the issue as tendered by the original petition and answer, defendant had sold all or substantially all of its machinery, fixtures, automobiles, trucks and other property owned and used in its business to Augustus E. Massey; that Massey had sold all of the said property to National Cleaning & Dyeing Company, Inc., a new corporation; that neither plaintiff nor any other creditor was notified of either of said transfers; that for this and other reasons the said transfers were in

violation of Act No. 270 of 1926 of Louisiana commonly known as the "Bulk Sales Act."

In the supplemental petition it is also alleged that the sale to Massey and the sale by Massey to National Cleaning & Dyeing Company, Inc., were not bona fide transactions, but were in fact simulations, and that therefore plaintiff should be allowed recovery directly from the National Cleaning & Dyeing Company, Inc., the new corporation, and, in the alternative, if the said transfers were in fact real sales, then judgment should be rendered against the said Massey because of the provisions of the Bulk Sales Law.

To this second petition both Massey and National Cleaning & Dyeing Company, Inc., filed exceptions of no cause of action, and the matter is now before us on appeal by the Item Company, plaintiff, from a judgment maintaining the said exceptions and dismissing the suit as to the defendants Massey and National Cleaning & Dyeing Company, Inc.

The contentions raised by the exceptions, though not specifically set forth therein, are as follows:

First, that the Bulk Sales Act (Act No. 270 of 1926) applies only to a merchandising business involving the buying and selling of goods, wares, and merchandise, and therefore has no application to such business as that conducted by the various defendants, that of dyeing and cleaning.

Second, that even in cases in which the act is applicable, it affords protection, not to all creditors, but only to those who have sold goods, wares, and merchandise.

In Esther R. Denekamp v. Mr. and Mrs. William F. Heisler and John D. Nix, Jr.,

12 La. App. 471, 126 So. 447, 448, we were called upon to consider and pass upon the identical question presented by plaintiff's contention that the statute in question applies to all classes of business and is not limited to persons, firms, and corporations engaged in merchandising, and in that case we said:

"Section 1 of the act prohibits the transfer in bulk of a stock of merchandise otherwise than provided by the act and sets forth the kind of merchandise embraced within the terms of the act as 'the whole of a stock of merchandise, or merchandise and fixtures, or of all or of substantially all of the fixtures or equipment used or to be used in the display, manufacture, care or delivery of any goods, wares or merchandise including movable store and office fixtures, horses, wagons, automobile trucks and other vehicles or other goods or chattels of the business of the transferor shall be void as against the creditors of the transferor, unless made in conformity with the provisions of this Act.' The only possible basis for the application of the act relied on to the transaction set forth in the petition is the use of the words 'or other goods or chattels of the business of the transferor.' But these words plainly relate to the goods or chattels of the same kind referred to in the detailed description. Defendant's boarding house business cannot be considered as merchandising within the meaning of the act. Swift v. Tempelos, 178 N. C. 487, 101 S. E. 8. 7 A. L. R. 1581; Bowen v. Quigley, 165 Mich. 337, 130 N. W. 690, 34 L. R..A. (N. S.) 218; Toxaway Hotel Co. v. Smathers, 216 U. S. 439, 30 S. Ct. 263, 54 L. Ed. 558."

In that case the Supreme Court granted a writ of certiorari and, after considering the case, remanded it on other grounds but did not discuss the question presented here.

Counsel for plaintiff call to our attention the fact that one of the cases cited in our opinion in the Denekamp case has no application to the particular question presented here, which is true, that case being

cited as authority for another proposition, and counsel also suggests that the other two cases dealt with statutes by their terms restricted in their application to mercantile pursuits, and it is argued that those cases should not be considered as binding even by authority of reason because our statute is broader than those which the courts in those cases discussed.

It is true that in Swift & Co. v. Tempelos, 178 N. C. 487, 101 S. E. 8, 7 A. L. R. 1581, the statute under consideration referred solely to "the sale in bulk of a large part or the whole of a stock of merchandise." Likewise in Bowen v. Quigley, 165 Mich. 337, 130 N. W. 690, 34 L. R. A. (N. S.) 218, the statute which the court was called upon to interpret was, by its terms, limited to the sale of "* * * a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business."

The Louisiana statute prohibits the sale out of the regular course of business of not only merchandise, but also fixtures and "other goods or chattels," and it is the inclusion in the prohibition of "other goods or chattels" which forms the basis of plaintiff's argument; it being conceded that if the inhibition were directed against the sale of merchandise and display fixtures only, it would be impossible to interpret the act as applying to any business other than that of selling merchandise.

However, we do not feel that by including in the inhibition the sale of "other goods or chattels" the Legislature intended to bring into the contemplation of the statute all businesses, but that the words above quoted were inserted for the purpose of bringing within the terms of the statute, not all businesses, but all property owned by any one engaged in the particular class of business contemplated, that of buying and selling merchandise.

It would be most unreasonable to interpret the act as applying to any other business than that of buying and selling, as it is manifest that any concern not engaged in such business cannot sell anything without complying with the detailed requirements of the act, because any such sale would manifestly be out of the usual course of business or trade.

A doctor is not engaged in selling merchandise. Therefore, any sale made by a doctor is out of the usual course of his trade or business. If a doctor desired to refurnish his office, he could not sell all or substantially all of his old furniture without first notifying all of his creditors and without otherwise complying with the detailed requirements of the statute.

A telegraph company is not engaged in buying and selling; therefore, any sale made by it is out of the usual course of its trade or business. If it became advisable to sell its old autotrucks used in repairing its telegraph lines, such sales could not be made without the preparation, ten days in advance, of a detailed inventory of the articles to be sold, without the preparation of a list of creditors, and without a notice from the transferee calling to the attention of each creditor the proposed transaction.

Such a result would be so burdensome to legitimate business that we cannot believe that it was intended by the Legislature.

If a statute is clear and unambiguous, courts may not look beyond the letter thereof in a pretended attempt to ascertain the reason which prompted the enactment. But where, as here, there is room for two interpretations, it is our duty to study the conditions which obtained at the time of

the passing of the act, in an effort to determine what prompted its enactment, and to use that purpose as a guide in determining the meaning of ambiguous terms.

The situation which confronted the Legislature of Louisiana was similar to that which faced the Legislatures of practically all the other states of the Union. It was found that the small and impecunious merchandiser could fill his shelves with stock purchased from wholesalers and then, without notice to the wholesalers, dispose over night of his entire stock leaving the wholesaler or other seller of merchandise without recourse against the person to whom the stock had been transferred.

In Lemieux v. Young, Trustee, 211 U. S. 489, 29 S. Ct. 174, 175, 53 L. Ed. 295, the Supreme Court of the United States recognized that such a situation required a remedy, and, in holding constitutional a statute somewhat similar to that which we are now investigating quoted with approval the language of the court of last resort of Connecticut, as follows:

"Twenty states, as well as the Federal government in the district of Columbia, have similar statutes, some with provisions, more stringent than our own, and all aimed at the suppression of an evil that is thus shown to be almost universal."

We are told that to interpret the statute as including only those engaged in merchandising will render it repugnant to the provisions of the Fourteenth Amendment of the Constitution of the United States as denying to such businesses the equal protection of the laws, and as denying to them due process of law, and that, if such is the case, and if our placing such an interpretation upon the statute will necessarily result in its hereafter being declared unconstitutional, we should not assume that the Legislature intended to act in defiance of the Constitution where an interpretation not repugnant thereto is reasonably possible.

Of course, the question of the validity of the statute is not now before us. Still, if we felt that the meaning, which we think the act contains, rendered it plainly violative of the constitution, we readily agree that we should seek to adopt some possible interpretation not objectionable.

It is true that in Illinois it has been held that a similar statute, if limited in its scope to one clas of business, is objectionable. Chas. J. Off & Co. v. Morehead, 235 Ill. 40, 85 N. E. 264, 20 L. R. A. (N. S.) 167, 126 Am. St. Rep. 184, 14 Ann. Cas. 434.

We are, however, of the opinion that the question of the unconstitutionality of such an act, if interpreted as we believe it should be interpreted, is not so free from doubt as counsel for plaintiff seem to think it. It has always been our view that it is not all discriminations which are prohibited by the Fourteenth Amendment, but only those which are unreasonable and which are not based on some fundamental difference justifying the distinction, and that a state may thus often, acting within its police power, place requirements on one kind of business not placed on others, provided those requirements are not unreasonable and are based on some fundamental difference distinguishing the particular kind of business from other businesses.

The Supreme Court of the United States has held, for instance in Lemieux v. Young, Trustee, supra, that just such a statute as we are now called on to interpret is not violative of the provisions of the Fourteenth Amendment, though it includes only those engaged in the sale of merchandise.

In fact, a careful study of the decision in that case and of the opinion in Kidd,

Dater & Price Co. v. Musselman Grocer Co., 217 U. S. 461, 30 S. Ct. 606, 54 L. Ed. 839, leads to the conclusion that the statute might, if held applicable to all classes of business, be objectionable for the reason that in the case of businesses in which compliance with the statute will constitute an unnecessary and unreasonable hardship as to them, the unconstitutionality which counsel now fears might really exist.

In the two cases to which we have referred the court at length discussed the reasonableness of the requirements of statutes similar to that before us, and said that as to merchants a real reason exists for such statutes, and that therefore there is no violation of the provisions of the Fourteenth Amendment.

So that instead of being plainly unconstitutional, if interpreted as we feel it should be, the situation seems to be rather the reverse and that there would be grave danger, if the statute could be interpreted as contended for by plaintiff, that later, in a direct action which might be brought, the unconstitutionality of the act might be decreed.

The conclusion to which we have come renders it unnecessary that we consider and discuss the other contention raised by defendants, and that is that even in the cases of those businesses included within the statute, it is not all creditors who are within the protection thereof, but only those who became creditors as the result of having sold goods or merchandise.

Nevertheless we feel that the provisions of the act with regard to that phase of the matter throw some light on the intention of the Legislature as to whether other than merchandisers were intended to be placed within the inhibition contained in the act because the affidavit which creditors are required to file in order to come within the protection of the statutes seems, by the form contained in the act, to be intended for use of only those who have sold merchandise.

The judgment appealed from is affirmed at the cost of appellant.