## Fulton v. Feeser

*George V. Hoover*, for rule; *George L. Reed*, contra.

WICKERSHAM, J., August 17, 1931.—It appears from the defendant's petition that he leased from the plaintiff a lot of ground fronting on River Drive, or Front Street, for a term beginning August 15, 1930, and ending on May 31,

1933, at and for the total rental sum of $1575, payable fifty dollars per month in advance. The defendant failed to pay the rent, whereupon judgment was entered upon the confession of judgment contained in the lease for the full amount of $1575.

Upon the presentation of defendant's petition to open the judgment, a rule was granted to show cause why the said judgment should not be opened, at the cost of the plaintiff, and all proceedings upon said judgment were stayed pending the determination of said rule.

The plaintiff filed an answer, after which depositions were taken and the case was heard by the court in banc.

It appears from the depositions that the plaintiff leased to the defendant a certain tract of land more fully described in the deed from the Commonwealth Trust Company et al. to Maynard M. Fulton, said deed being recorded in the Office for the Recording of Deeds in and for Dauphin County in Deed Book K, volume 21, page 57, "to have and to hold unto the party of the second part, subject to the conditions of this agreement, and also subject to the restrictions contained in the indenture hereinbefore mentioned. . . ." It further appears that the land described in the lease from Fulton to the defendant, Feeser, was to be used as a miniature golf course. It appeared from the evidence that after the lease was executed the defendant proceeded to grade the lot in order to fit it for the installation of said miniature golf course, when he or one of his employees was informed that there was a restriction in the deed which would prevent him from using the land for the purpose for which it was leased.

The restriction in the deed about which this controversy arises is as follows: "None of said within described property shall be used for a mercantile establishment of any kind or a hospital, and no apartment house shall be erected thereon."

The other covenants in the deed do not interest us.

The defendant's first contention was that he knew nothing about this restriction in the deed until he started to grade the land after the lease was made, but he admits he read the lease, a copy of which is attached to defendant's petition, which contains the statement which we have quoted, that the land was leased to him subject to the restrictions contained in the deed referred to in the lease. This, we think, should have put him on inquiry as to what the restrictions were.

Referring now to the depositions, when asked why he quit work on the ground, he testified:

"Not any more than that there were restrictions on the ground prohibiting anything on the ground in that part in regards to mercantile or anything that came under mercantile, hospital or hotel."

He further testified he did not see the deed referred to in his lease. On cross-examination, however, he admits he read part of the lease and that Mr. Sylva read it. In answer to the question:

"Q. Didn't you see the deed from the Commonwealth Trust Company to Fulton at Sylva's office?" Mr. Feeser replied: "A. I saw the deed lying on the desk but I didn't read it."

"Q. And although you knew that the lease you were signing contained express reference to the restrictions in the deed and you saw the deed lying there, you didn't even take the trouble to read the deed? A. No, I didn't bother about the deed."

The plaintiff and Mr. Sylva, who wrote the lease, testified that the restriction in the deed was explained to Feeser and all of them agreed there would not be any restrictions there that would stop anyone from going ahead with a golf course because "we didn't figure that it would apply as a mercantile business"

(depositions, pages 13, 15, 16). And Mr. Sylva testified (depositions, pages 22, 23):

". . . I said to him, too, that I did not think a golf course would be a mercantile affair and I think so now, that is all about it. Mr. Feeser agreed with me that it wasn't a mercantile affair at all, so I put it in the lease that there could be no mistake about it."

We think the important question to determine in this case is: Does the restriction in the deed prevent the defendant from establishing a miniature golf course upon the land which he leased?

The learned counsel for the defendant suggests that a court of equity will restrain the operation of a miniature golf course or other business if it appears to create a nuisance in a residential section. This is undoubtedly true, and Judge Hargest extended the rule to a miniature golf course in Gottschall et al. v. McIlhenny, No. 958, Equity Docket (not yet reported); however, we think this is aside from the question. It is a risk which everyone takes in establishing a business such as that upon which the defendant desires to embark. It must be so conducted as not to annoy the neighbors in the vicinity where the business is conducted. But what has that to do with the controversy in the instant case? What light will it throw upon the question at issue, which is whether the miniature golf course which the defendant proposed to maintain on the leased ground is in violation of the restriction contained in the deed and referred to in his lease. In other words, is a miniature golf course a mercantile establishment?

If this were a proceeding in equity, the argument of counsel for the defendant would apply. For example, he depends upon Hohl v. Modell, 264 Pa. 516, which was an equity proceeding to prevent the enlargement of a garage; Phillips v. Donaldson, 269 Pa. 244, in which a public garage was enjoined under the provisions against "any noxious or offensive trade . . . to the hurt, damage or annoyance of others;" and Murphy v. Ahlberg, 252 Pa. 267, where the court enjoined the building of second- and third-story porches several houses away from plaintiff where there was a provision for "free and unobstructed right of . . . prospect." Clearly, these cases are not controlling. Counsel for defendant also relies on Gunther v. Atlantic Refining Co., 277 Pa. 289, where the court enjoined the erection of a filling station under the restriction against stores, the court saying:

". . . That such use was for the purpose of trading and came within the designation of a store within the meaning of a clause restricting the premises to residential purposes can hardly be doubted."

We pause here to state that there is no such restriction in the deed hereinbefore referred to. We have failed to find anything in the cases referred to which in our judgment would be controlling. Our attention has not been directed to any Pennsylvania decision defining "mercantile establishment." In Hotchkiss v. District of Columbia, 44 D. C. App. 73, and Graham v. Hendricks, 22 La. Ann. 523, we find the following definition which meets with our approval:

"A mercantile establishment is a place where the buying and selling of articles of merchandise is conducted, and the conducting of such an establishment implies operations conducted with the view of realizing the profits which come from skillful purchase, barter, speculation and sale."

Furthermore, a shoe shining parlor and hat cleaning shop was held not to be a "mercantile establishment" within the meaning of a lease providing that the premises shall not be used for any other than mercantile purposes: Cesar v. Virgin, 207 Ala. 148, 24 A. L. R. 715. "Mercantile" is defined by Webster as "pertaining to merchants or the business of merchants:" In re San Gabriel Sanatorium Co., 95 Fed. 271. "Mercantile purposes," within the meaning of a

174

lease of a building to be used for mercantile purposes, cannot be construed to include a barber shop: Cleve v. Mazzoni, 19 Ky. Law Rep. 2001, 45 S. W. 88. See, also, cases referred to under the title "Mercantile" in 5 Words and Phrases, 3rd Series, beginning at page 92; also 40 C. J. 634, where "mercantile" is defined:

"Commercial; having to do with trade or commerce; having to do with trade or the buying and selling of commodities; of or pertaining to merchants or the traffic carried on by merchants; trading; pertaining to merchants or the business of merchants. The word 'mercantile' in its ordinary acceptation pertains to the business of merchants and has to do with trade, or the buying or selling of commodities;" citing many cases.

See, also, Toxaway Hotel Co. v. Smathers & Co., 216 U. S. 439, where it is held: "An occupation that is not trading is not a mercantile pursuit."

We have not been able to find any definition of "mercantile establishment" either in Pennsylvania or elsewhere or in any textbook which includes, either directly or indirectly, a miniature golf course. Nor does it appear any place in the testimony that the defendant intended, in connection with the miniature golf course, to transact a mercantile business.

We are of the opinion that the defendant was not justified in refusing to pay the rent for the land which he leased; that the miniature golf course which he proposed to erect was not included within the restriction contained in the deed above quoted, and, therefore, the rule to show cause why the judgment entered upon the lease should not be opened must be and is hereby discharged.