Dear Mr. Henson:
You have requested an opinion of the Attorney General regarding an appropriation appearing in schedule 20-945 of Act 13 of the 2002 Regular Session (Act 13), the General Appropriation Act for fiscal year ending June 30, 2003. The appropriation appears under the heading "State Aid to Local Government Entities" and provides:
 Payable out of the State General Fund (Direct) for technology initiatives for East Baton Rouge, East Feliciana, West Feliciana, and St. Helena Parishes $100,000.
You state that the language of the appropriation is silent as to which entity or entities within the respective parishes are to receive the funds appropriated. We further note that the language is silent as to the nature of the technology initiatives to be funded. Parenthetically, it should also be noted that pursuant to Section 8 of Act 13, the subject appropriation has been reduced from $100,000 to $93,222. Reference Executive Orders MJF 02-29, 03-4 and 03-5.
You specifically ask to which entity or entities can the Treasurer disburse the $93,222. We believe a brief discussion of the circumstances leading up to the inclusion of this appropriation in Act 13 is necessary and relevant to the resolution of your inquiry.
The appropriation at issue resulted from an amendment by Senator Gregory Tarver (Tarver amendment) to Act 13 that was proposed and adopted by the Senate Finance Committee, without discussion or objection, on May 20, 2002. It was added at the request of Senator Melvin "Kip" Holden. The amendment evolved from meetings between Senator Holden and constituents, educators and educational technology organizations to address the development and use of technology in educational institutions at the K-12 level. Reference a notice and agenda for a meeting held on March 28, 2002, attached as Exhibit A.
One of the many pressing issues facing Louisiana's educators and school systems today is properly aligning academic curriculum, learning resources and assessments to rigorous academic standards to best serve teachers and reporting requirements. The newly authorized Federal Elementary and Secondary Education Act, commonly referred to as "No Child Left Behind" has placed stringent demands on educators and administrators to raise student achievement and to document, in considerable detail, ongoing improvement and success.
Our school districts face the daunting task of integrating proprietary information technology (IT) systems and legacy data stores to meet new federal reporting and accountability requirements. The burden is perhaps even greater on our classroom teachers who must incorporate an array of local, state, and national academic standards into classroom delivery and assessment. With federal funding at stake, our State's educational systems are looking for market solutions that embrace open, non-proprietary standards for data interchange and business process integration.
The appropriation in question would provide funding for a joint project between Intel, JES and Company (JES) and the East Baton Rouge (EBR), East Feliciana, West Feliciana and St. Helena Parish School Districts (Districts). We have been provided with a copy of a 13 page document entitled, "The Baton Rouge Initiative" (Initiative) which describes and defines this project.
Under the terms of the Initiative, JES, a 501(c)(3) nonprofit educational organization, will (1) place 4 Academic Standard and Assessment Systems (ASAS) servers at each District site and 1 consolidation server at the EBR District site, (2) create 4 teams (1 at each District site) responsible for creating content for the ASAS, (3) train 40 users on the ASAS servers, and (4) populate the ASAS servers with entries created by the teams and other entries provided by JES and their partners.
Completion of the above will enable the participating school districts to (1) create quality lesson plans that can be shared, distributed and reused by educators, (2) create quality test items aligned to standards, (3) use ASAS for developing custom assessments, (4) use ASAS for developing, finding and using lesson plans, and (5) find and use core and supplemental materials that are aligned to standards.
The scope of the project includes, as an extra add-on, 30 classroom computers from Intel which have already been delivered to two of the Districts. Intel reserves the right to retrieve this equipment if the project is not implemented.
By letter dated April 14, 2003, Senator Tarver states the following with respect to the legislative intent behind the amendment:
 It has been brought to my attention that there is a question about the legislative intent of an amendment I added to the 2002-2003 appropriation bill on behalf of Senator Kip Holden.
 Although the language reads "Payable out of the State General Fund (Direct) for technology initiatives for East Baton Rouge, East Feliciana, West Feliciana and St. Helena Parishes $100,000", Senator Holden asked that the appropriation be used for technology in schools. The Treasurer says it is unclear as to whom this appropriation should be sent. I can state unequivocally that this appropriation was intended for the school systems in those parishes. (Emphasis added.)
We find the terms "technology initiatives" and "Parishes" in the amendment to be ambiguous and determine that an examination of the legislative intent behind the amendment is appropriate.
The basic tenets of statutory construction applicable to the resolution of this issue are found in Louisiana Civil Code Articles 9—12 and Title 1, Sections 3-5 of the Louisiana Revised Statutes. They provide as follows:
Art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
Art. 11. Meaning of words
 The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter.
Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
§ 3. Words and phrases; how construed
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" permissive.
§ 4. Unambiguous wording not to be disregarded
 When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
§ 5. Clerical and typographical errors
 Clerical and typographical errors in the Revised Statutes shall be disregarded when the meaning of the legislature is clear.
Our jurisprudence has been historically consistent in applying these rules. The following represent selected quotations from cases we believe are relevant to the issue before us:
Hawaii v. Mankichi, 190 U.S. 197, 212, 23 S.Ct. 787, 788,47 L.Ed. 1016, 1020:
 Without going back to the famous case of the drawing of blood in the streets of Bologna, the books are full of authorities to the effect that the intention of the lawmaking power will prevail, even against the letter of the statute; or, as tersely expressed by Mr. Justice Swayne in Smythe v. Fiske "A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law."
Palmer v. La. State Bd. of Elementary and Secondary Education,2003 WL 1826544
(La.) 2002-2043 (La. 4/9/03):
 The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law.
* * *
 Furthermore, the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result.
See also SWAT 24 Shreveport Bossier, Inc. v. Robbie Bond, 808 So.2d 294
(La. 2001) and Succession of Boyter, 756 So.2d 1122 (La. 2000) Rehearing Denied.
Tennessee Gas Transmission Company v. Violet Trapping Company, Inc.,248 La. 49, 176 So.2d 425 Rehearing Denied:
 A rule of statutory construction, the soundness of which is attested by long use, and the frequent and continuing approbation of judicial tribunals, is that the intent of the law-maker is to be ascertained by inquiring what was the motive in legislating — what was the mischief sought to be avoided or remedied, and what the object or good to be attained.
State v. Rogers, 148 La. 653, 87 So. 504 Rehearing Denied:
 Verbal inaccuracies or clerical errors in the use of words or numbers in a statute may be recognized and corrected by the courts whenever necessary to carry out the manifest intention of the Legislature, as gathered from the context of the act. Words, phrases, and sentences may be transposed whenever necessary to give effect to all the words in the statute and to carry out the manifest intent.
See also Smythe et al. v. Home Life Accident Insurance Company,134 La. 368, 64 So. 142.
Devine v. National Life Accident Ins. Co. of Nashville, Tenn., 166 So. 522
Rehearing Denied:
 While it is true that courts have no concern with the wisdom or policy of the statute, their function being confined to its interpretation, it is also true that occasions may now and then arise when, from the necessity to make particular statutes intelligible and operative courts will correct or ignore obvious inadvertencies therein.
West Monroe Police Local 135, IUPA, AFL-CIO v. Norris, 720 So.2d 434
(La.App. 2 Cir. 10/28/98) Rehearing Denied:
 The paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute.
Item Co., Ltd. v. National Dyers and Cleaners, Ltd., 15 La. App. 108,130 So. 879 Rehearing Denied:
 If a statute is clear and unambiguous, courts may not look beyond the letter thereof in a pretended attempt to ascertain the reason which prompted the enactment. But where, as here, there is room for two interpretations, it is our duty to study the conditions which obtained at the time of the passing of the act, in an effort to determine what prompted its enactment, and to use that purpose as a guide in determining the meaning of ambiguous terms.
The Tarver amendment to fund technology initiatives in the East Baton Rouge, East and West Feliciana and St. Helena Parish School Districts was driven by Senator Holden's desire to provide and/or upgrade computer technology in some of our rural school systems. His intentions are unequivocally reflected in the agenda for the "Felicianas Technology and Education Meeting" on March 28, 2002, (less than two months before the amendment's adoption):
Issues
 Technology in education In 1997, Louisiana began an effort to equip Louisiana classrooms with computers and internet connections with a commitment of $38.1 million. The next year, lawmakers set aside $25 million, but in 2000 only $2.5 million was allocated to the effort and this year's budget includes NO money for classroom based technology. There are still some schools with only 1 computer for the entire school and over 40% of the public school classrooms across the state still do not have access to the internet. The department is requesting the state to resuscitate the effort with $25 million in the 2001-02 budget and to commit to continued funding over a five year period. Education officials believe technology is vital to quality instruction and learning experiences in the classroom. The state is also relying more and more on technology for distance learning programs and continuing education for teachers.
The manifest intent of the Tarver amendment is clearly to provide computer technology initiatives for the school districts enumerated therein. We are not disposed to give the amendment a meaning which we are certain the Legislature did not intend it should have, merely because the language used is not as precise in its meaning as it might have been.
To conclude that the appropriation must be distributed to the parish governing authorities for expenditure would produce absurd and unreasonable consequences. It is axiomatic that, in the absence of a home rule charter or a vote of the electorate, a police jury is a creature and subordinate political subdivision of the State and, as such, possesses only those powers conferred by the State's Constitution and statutes. American Waste v. St. Martin Parish Police Jury,609 So.2d 201 (La. 1992) and Attorney General Opinion No. 84-61.
We are aware of no legal authority that would permit a parish governing authority to provide computer technology initiatives or the funding therefore to school districts. To the contrary, such and arrangement would be subject to constitutional challenge under Article VII, Section14 of the Louisiana Constitution of 1974. In accord are Attorney General Opinion Nos. 03-0101, 93-130 and 82-654.
Applying the statutory and case law discussed above, it is our opinion that the technology initiatives referenced in the Tarver amendment were intended to be received by the four School Districts also referenced therein. Accordingly, and in answer to your question, the distribution of the $93,222 appropriation can be made to the School Districts.
It is our understanding that an alternative plan of distribution has been proposed under which the funds would pass directly to JES. We have been furnished with copies of letters from the Superintendents of each School District to the State Treasurer (attached in globo as Exhibit B) authorizing the release and distribution of the funds to JES. The declarations contained in these letters conform to the recommendations of your staff. In addition, JES has notified your staff by letter dated March 25, 2003, that it has and will continue to comply with the provisions of Section 15(B) of Act 13. Having already concluded that the funds can be distributed to the Districts, we have no objection to the funds being disbursed to JES as authorized by the letters comprising Exhibit B.
In summary, it is the opinion of this office that the funds appropriated pursuant to the Tarver amendment can be distributed to the East Baton Rouge, East Feliciana, West Feliciana, and St. Helena Parish School Districts. Alternatively, said funds can be disbursed by the State Treasurer to JES.
With kindest regards, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH/wwh
cc: Honorable Richard P. Ieyoub, Attorney General Honorable John N. Kennedy, State Treasurer Honorable Melvin "Kip" Holden, Louisiana Senate James H. Napper, III, General Counsel and Assistant Attorney General Lee Ann Butler, Assistant General Counsel Gary Hall, Treasury Fiscal Officer Jodi Mauroner, House Fiscal Division Martha Hess, Assistant Attorney General
DATE RELEASED: May 14, 2003
 ROBERT E. HARROUN, III, ASSISTANT ATTORNEY GENERAL